[No. 19574. *En Banc.* July 15, 1926.]

John M. Jones, *Respondent,* v. American Savings Bank & Trust Company, *Appellant.*[1]

[1] Bills and Notes (17, 34)—What Law Governs—Negotiability. The negotiability of bonds, bought and delivered in this state, is to be determined by the laws of this state, whether they were assigned with or without indorsement.

[2] Municipal Corporations (531)—Bonds—Transfer—Negotiability—Rights of Bona Fide Purchasers. Municipal local improvement bonds, payable only from the fund collected by assessments, and merely made a lien on the property in the improvement district, are not negotiable instruments, within the definition of Rem. Comp. Stat., § 3392, requiring an unconditional promise to pay a sum certain, and § 3394, providing that an order payable only out of a particular fund is not unconditional; hence title cannot be acquired through transfers from one who stole the bonds (Askren, Main and Mackintosh, JJ., dissenting).

Appeal from a judgment of the superior court for King county, Smith, J., entered May 28, 1925, upon findings in favor of the defendant, in an action to determine the title to municipal bonds. Affirmed.

*Stratton & Kane,* for appellant.

*Alex. Stewart* and *Robert D. Hamlin,* for respondent.

Holcomb, J.—Respondent brought this action to recover possession of four special improvement bonds

[1] Reported in 247 Pac. 1017.

of the city of Billings, Montana, in the sum of $500 each, payable from the collection of a special tax or assessment, or, in case delivery could not be had, in the alternative for the alleged value of the bonds in the sum of $2,136.68, with interest and costs.

Respondent alleged that he purchased the bonds on January 22, 1923, from the Vashon State Bank, at Vashon, Washington, and that the bonds were payable exclusively from the collection of a special tax or assessment, which is a lien against certain real estate within district No. 196, in Billings, Montana, described in Resolutions Nos. 1109 and 1123, under which resolutions and ordinance No. 899 of Billings, the bonds were authorized and issued. Copies of the resolutions and ordinance were attached to the complaint, marked exhibits. A copy of one of the bonds, marked as an exhibit, was also attached to the complaint. Respondent further alleged that he had never sold, endorsed or transferred, or in any manner disposed of any of the bonds; that the bonds were stolen from his safety deposit box in the vault of the Vashon State Bank by unknown persons who entered the premises by force, and rifled the contents of the safety boxes including that of respondent; that on or about January 16, 1924, the bonds were in the possession, and continued to be in the possession from that time until the commencement of the action, of appellant, who claimed ownership thereof through alleged purchase, and that at all times since the bonds were stolen appellant knew that the same were stolen, and the property of respondent, and was familiar with the nature and the value of the securities, and that the persons from whom the bonds were purchased or secured did not have legal title thereto, and that the bank was not in lawful possession of the bonds. It is also alleged that the bank wrong-

fully took and retained possession of the bonds and refused to deliver them to respondent on demand.

Appellant answered, denying the material portions of the complaint, and set up an affirmative defense that it purchased the bonds in good faith, and for value before maturity, and that, at the time of such purchase, they had no notice of any infirmity in the instruments, or defect in the title of the person negotiating them; that the bonds were issued under authority of, and pursuant to, section 25, chapter 89, Montana Session Laws of 1913, Revised Codes of Montana, 1921, and set up a copy of the act which specified the form of the bonds to be issued, and provided for the manner of payment thereof.

Respondent replied to the affirmative defense, denying that the bank purchased the bonds in good faith, but admitting the statutes of Montana pleaded in the answer, and for further reply respondent set up a copy of §§ 8408 and 8410 of the statutes of Montana.

The court, among other things, made the following findings of fact:

"II. That on or about the 22nd day of January, 1923, plaintiff purchased from the Vashon State Bank at Vashon, Washington, four (4) Special Improvement Bonds of the City of Billings, Montana, being District 196, in the amount of Five Hundred Dollars ($500.00) each, payable exclusively from the collection of a special tax or assessment which is a lien against certain real estate within said District No. 196, described in the resolutions and ordinance of the City Council of the City of Billings, Montana, Nos. 1109, 1123 and 899, copies of the same being attached to the complaint on file in this action and marked Exhibits A. B. and C. respectively, to which reference for greater particularity is now made, and that said bonds are redeemable and payable by the Treasurer of the City of Billings, State of Montana, only when there are sufficient funds to the credit of the Special Improvement District

Fund, which said bonds are issued and available therefor; that the said bonds so issued by the City of Billings are numbered 101, 102, 103 and 104, and were so issued on or about the 18th day of October, 1922, and bear interest at the rate of 6 per cent per annum; that each of said bonds had attached thereto interest coupons of $34.17 payable January 1, 1924, and coupons for $30.00 each payable annually thereafter until the maturity of said bonds; and that a true copy of said bonds is attached to the complaint herein marked Exhibit "D" and is now herein set forth in these Findings, to-wit:

" 'Bond No......................................        $500.00

" 'CITY OF BILLINGS
" 'Special Improvement District No. 196
" 'BOND
" 'Six per cent., payable annually

" 'The Treasurer of the City of Billings, Montana, will pay to WARREN CONSTRUCTION COMPANY, or bearer, the sum of Five Hundred and no/100 Dollars, as authorized by Resolution No. 1123, as passed on the 6th day of June, 1922, creating Special Improvement District No. 196 for the construction of the improvements and the work performed as authorized by said Resolution to be done in said district, and all laws, resolutions and ordinances relating thereto, in payment of the contract in accordance therewith. The principle and interest of this bond are payable at the office of the City Treasurer of Billings, Montana. This bond bears interest at the rate of six per cent. (6%) per annum from date of registration of this bond as expressed herein, until the date called for redemption by the City Treasurer. The interest on this bond is payable annually on the first day of January of each year, unless paid previous thereto, and as expressed by the interest coupons hereto attached, which bear the engraved facsimile signatures of the Mayor and City Clerk. This bond is payable from the collection of a special tax or assessment which is a lien against the real estate within the Improvement District, as described in said Resolution hereinbefore referred to. This bond is redeemable at the option of the City at

any time there are funds to the credit of said Special Improvement District Fund for the redemption thereof, and in the manner provided, for the redemption of the same, provided, however, that payment shall not be made later than such time as will permit the levy of 12 annual consecutive tax levies after the date of the issuance hereof.

"It is Hereby Certified and Recited, that all things required to be done precedent to the issuance of this bond, have been properly done, happened and been performed in the manner prescribed by the laws of the State of Montana and the resolution and ordinances of the City of Billings, Montana, relating to the issuance thereof.

" 'Dated at Billings, Montana, this 18th day of October, 1922.              (Signed) J. M. Noyes,
                      " 'City Treasurer.

. " 'This bond and 12 coupons attached hereto registered at the office of the City Clerk of Billings, Montana, this 18 day of October, 1922.
                      " '(Signed) E. H. Sackett,
                              " 'City Clerk.'

"And the other of said bonds are of like tenor and effect, and that plaintiff never sold, endorsed, transferred or in any manner disposed of either of them."

Then follow findings containing the laws of Montana relating to special local improvement district issues of bonds and warrants and the Montana Uniform Negotiable Instruments Law, which, by reason of our determination herein, we deem irrelevant.

"VI.  That the demand was made of the defendants prior to the commencement of this action by the plaintiff for said bonds, and the defendant failed, neglected and refused to deliver said bonds or any of them to the plaintiff, which refusal continues to this date, and that the plaintiff is the owner of said bonds and each of them and entitled to the possession thereof."

The court then made the following conclusions of law, applying the laws of Montana to the question of negotiability:

"That the plaintiff, John M. Jones, is the lawful owner of the bonds in the complaint and in these findings more particularly set forth and described and is entitled to the immediate possession of said bonds as against the defendant and all other persons claiming or to claim the same.

"That said bonds are not negotiable instruments as defined by the law and that their negotiability is to be determined by the laws of the State of Montana existing at the time the bonds were issued, and by reference to the resolutions and ordinance of the City of Billings, State of Montana, hereinbefore referred to and set forth in the complaint of the plaintiff and also referred to in the said bonds and each of them, in that the said bonds and each of them are payable only out of a particular fund, and do not contain an unconditional promise or order to pay a sum certain in money, and are not payable on demand or at a fixed or determined future time, and are payable upon a contingency dependent upon the sufficiency and availability of the fund in District No. 196, of the City of Billings, State of Montana.

"That plaintiff is entitled to judgment against the defendant for the immediate delivery of said bonds together with the coupons falling due January 1, 1924, on each of said four bonds in the sum of $34.17, and annually thereafter in the sum of $30.00, and in the event such delivery is not or cannot be made that plaintiff have judgment against the defendant in the sum of Two Thousand Dollars ($2,000.00) with interest thereon at the legal rate from January 1, 1925, to date of payment, together with the sum of $136.68, together with interest thereon from January 1, 1924, to date of payment, together with a further sum of $120.00 and interest thereon at the legal rate from January 1, 1925, to date of payment, together with the costs and disbursements of the plaintiff as provided by law and that execution issue thereon."

Appellant excepted to the findings numbered 2 and 6, and specially excepted to a certain portion of finding

No. 2, and to the conclusion of law rendered by the court.

These local improvement bonds were admitted to be part of the loot secured by the thieves which was the subject of the contest in *Manker v. American Savings Bank & Trust Co.,* 131 Wash. 430, 230 Pac. 406. In that case the local improvement bonds of a district in Seattle were involved in which the bonds contained special restrictive clauses in conformity with the statutes of this state respecting local improvement districts.

. There is but one question to be determined in this case, and that is, Are the local improvement bonds in question negotiable?

Appellant admits that, being stolen, if they are nonnegotiable it is not entitled to retain them; but otherwise, it is.

. It was stipulated in the trial of the case that the statutes and ordinances pleaded by the parties respectively were the statutes in force in Montana, and in the city of Billings, but appellant saved the question and here contends that the law of Washington only, as to the transfer to it, applies.

Both parties rely upon the *Manker* case, *supra,* appellant contending that it decides that an instrument payable out of a particular fund is negotiable, but when payable *only* out of a particular fund it is not negotiable.

[1] Appellant also contends that the question of the negotiability of the bonds is to be decided by the law of this state, and that each endorsement, or delivery, where the instrument is not endorsed as an instrument payable to bearer, as these instruments were, is a separate and distinct contract, and that the law which governs as to the execution, interpretation, and validity

of the original contract does not govern the law as to the transfer or delivery of title to such instruments.

8 C. J., § 173, p. 100, is quoted to the general effect that, since the contract by endorsement is a new and independent contract, it is governed by the law of the state where it was made and takes effect, and includes the validity of the endorsement, the capacity to endorse, the form or sufficiency of the instrument, the consideration, and interpretation of the instrument, and the rights and liabilities of endorser and endorsee; that the law of the forum is controlled by the law of the place of endorsement; that this general rule applies equally to an assignment with or without endorsement. Appellant also cites and quotes from *Walling v. Cushman,* 238 Mass. 62, 130 N. E. 175, and *Nichols' Executor v. Porter,* 2 W. Va. 13, 94 Am. Dec. 501.

We agree that the law of this state controls.

[2] In the *Manker* case, *supra,* the bonds provided that the holder should have no claim against the city therefor except from the special assessment made for the improvement for which such bonds were issued. Other provisions were that the city of Seattle promised to pay the bearer out of the funds established by the local ordinance and the local improvement district fund, and not otherwise; that the owners and holders of the bonds should look only to that fund for the payment of their principal and interest on the bonds.

We quoted the provisions of the negotiable instruments act, § 3392, and also § 3394, Rem. Comp. Stat. [P. C. §§ 4072, 4074], which provide that:

"An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with—(1) An indication of a particular fund out of which the reimbursement is to be made, . . . But an order or promise to pay only out of a particular fund is not unconditional."

There can be no doubt that the bonds in that case were very emphatic and explicit in restricting payment to the local improvement district fund, and the credit of the city was carefully withheld, and in no wise pledged. We also said in that case:

"Section 3394, Rem. Comp. Stat., *supra,* modifies the rule of the law merchant by providing that, where the promise to pay was out of a particular fund, such promise was nevertheless unconditional, but that where a particular fund *only* was to be looked to for the payment, such payment was conditional, and therefore the instrument containing it was non-negotiable."

We therefore held that the thief in that case took no title to the bonds stolen, and transferred no title or right.

Appellant contends that the use of the word "only" in our statute and the instruments in question there, and the specially restrictive clauses therein, were of controlling significance, and so intended in the decision in that case. But an inspection of the context of these bonds shows that, though neither the word "only" nor "exclusively" appears, the effect is the same.

[1]  While the face of the bond commences "The Treasurer of the City of Billings, Montana, will pay to Warren Construction Company, or bearer, the sum of Five Hundred and no/100 Dollars," that is immediately followed by a condition reciting, "as authorized by resolution, etc., as passed on the 6th day of June, 1922, creating Special Improvement District No. 196 for the construction of the improvement and the work performed as authorized by said resolution to be done in said district, and all laws, resolutions and ordinances relating thereto, in payment of the contract in accordance therewith."

There is a provision also as follows:

"This bond is payable from the collection of a special tax or assessment which is a lien against the real estate within the Improvement District, and described in said Resolution hereinbefore referred to. This bond is redeemable at the option of the City at any time there are funds to the credit of said Special Improvement District Fund for the redemption thereof, and in the manner provided for the redemption of the same, provided, however, that payment shall not be made later than such time as will permit the levy of twelve annual consecutive tax levies after the date of the issuance hereof."

A casual inspection by anyone would disclose that the city of Billings did not issue the bonds as a general liability, but issued them only as a promise to pay out of a special fund, and no other. The credit of the local improvement district only was pledged.

Such being the case, the bonds were mere choses in action or chattels, and it is elementary that one who obtained them from a thief obtains no right or title thereto. This case is, therefore, within the principles announced in the *Manker* case, *supra,* and although the trial court thought the laws of Montana applied, while we think the laws of Washington apply, the result is the same.

The judgment is affirmed.

MITCHELL, J., concurs with HOLCOMB, J.

PARKER, J. (concurring)—I reluctantly concur in the conclusion reached in the foregoing opinion, and feel compelled to do so by reason of the decision in *Manker v. American Savings Bank & Trust Co.,* 131 Wash. 430, 230 Pac. 406, in which case I dissented from the conclusion of the majority of the court. I am unable to see that the local improvement bonds here in question come any nearer being an unconditional promise on the part of the city of Billings than were the local improve-

ment bonds involved in the *Manker* case an unconditional promise on the part of the city of Seattle.

FULLERTON, J. (concurring)—While I concur in the conclusion reached by Judge Holcomb, I do so for a different reason than is stated in his opinion.

The provisions of the negotiable instruments act pertinent to the inquiry before us are found at §§ 3392, 3394 and 3395 of Rem. Comp. Stat. [P. C. §§ 4072, 4074, 4075], and read as follows:

"§ 3392.   An instrument to be negotiable must conform to the following requirements:

"1.   It must be in writing and signed by the maker or drawer;

"2.   Must contain an unconditional promise or order to pay a sum certain in money;

"3.   Must be payable on demand, or at a fixed or determinable future time;

"4.   Must be payable to order or to bearer; and,

"5.   Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty."

"§ 3394.   An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with—

"1.   An indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount; or

"2.   A statement of the transaction which gives rise to the instrument.

"But an order or promise to pay only out of a particular fund is not unconditional."

"§ 3395.   An instrument is payable at a determinable future time, within the meaning of this act, which is expressed to be payable—

"1.   At a fixed period after date or sight; or

"2.   On or before a fixed or determinable future time specified therein; or

"3.   On or at a fixed period after the occurrence of a specified event, which is certain to happen, though the time of happening be uncertain.

"An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect."

The instrument before us, the negotiability of which is in question, contains a promise to pay the sum of five hundred dollars "as authorized by Resolution No. 1123, as passed on the 6th day of June, 1922, . . . not . . . later than such time as will permit the levy of 12 annual consecutive tax levies after the date of the issuance hereof." This, it is at once apparent, is not a promise to pay on demand or at a fixed future time, and, if the promise is sufficiently definite to bring it within the terms of the statute, it is because it is payable at a "determinable future time." But I cannot think it is thus definite. To ascertain this we must look to the definition in § 3395, *supra*. Comparing the terms of the promise with that section, it is plain that the promise does not fall within the first nor the third of its subdivisions; the instrument is not "expressed to be payable at a fixed period after date or sight," nor "on or at a fixed period after the occurrence of a specified event which is certain to happen." Nor is it within the first of the conditions of subdivision 2 of that section; it is not "expressed to be payable . . . on or before a fixed . . . future time specified therein." Nor is it, in my opinion, within the second condition of this subdivision, the only one within which it can possibly fall. To come within this condition it must be "expressed to be payable on or before a . . . determinable future time specified therein," and I cannot conceive that a determinable future time of payment is expressed. It cannot be told from the face of the bond whether it is payable after one year or after twelve years, or within any intermediate time between these periods. We know from an examination

20—139 WASH.

of the proceedings leading up to the issuance of the bond that it is one of a number of such instruments, and is payable in its order as determined by number, but this is not expressed on the face of the bond, and to make it payable at a determinable future time it was necessary that it be so expressed.

It is not my opinion that we may look to the proceedings leading up to the issuance of the bond to determine its negotiability, but conceding that we may do so, an examination will show that the bond falls within the ban of Rem. Comp. Stat., § 3394, above quoted. The resolution referred to in the bond is not complete in itself, but refers to a prior resolution which it is necessary to consult to understand its meaning, and this prior resolution plainly declares that the bond is payable "only out of a particular fund;" namely, a fund created by assessment upon the property within a special improvement district.

On any theory, therefore, I am compelled to conclude that the bond is not negotiable.

TOLMAN, C. J. (dissenting in part)—I concur in the order affirming the judgment of the trial court upon the theory which governed the trial court in reaching that judgment.

While, generally speaking, the effect of an indorsement or attempted transfer of an instrument will probably be determined by the law of the place where the transfer was made, yet in my judgment that rule does not apply here. The instrument in question was made and issued by a municipality having no power to incur indebtedness or issue evidences thereof, save only as such power is conferred by the sovereign state within which it is situate. That it was issued under the statutory laws of Montana and is payable according to such laws, fully and specifically appears upon the face

of the instrument; and anyone dealing with such evidence of indebtedness, made as was this instrument in Montana under and by virtue of the laws of Montana and payable in Montana, must of necessity go to the laws of Montana to determine the character of the instrument as to its negotiability. Very clearly and admittedly the laws of Montana deny to this instrument any negotiable qualities. Therefore, notwithstanding the general rule applicable to ordinary transactions of private persons, natural or artificial, since the instrument was nonnegotiable in its inception by virtue of the laws which authorized its issuance, it must remain so until it is paid, no matter where indorsement or delivery took place, and such indorsement or delivery, even under our laws, was of a nonnegotiable instrument and passed no title. If there be authorities to the contrary, it seems to me they can not be defended upon logical grounds.

I therefore concur in the affirmance of the judgment.

ASKREN, J. (dissenting)—I must dissent from the foregoing opinion in so far as it holds that the bonds in question are nonnegotiable. I agree with the holding that the law of Washington controls.

The majority opinion holds that under Rem. Comp. Stat., §§ 3392 and 3394 of our negotiable instruments statute, bonds of the character here in question are negotiable, unless they contain a provision showing that the order or promise to pay is to be *only* out of a particular fund. This, of course, is a restatement of our decision in *Manker v. American Savings Bank & Trust Co.*, 131 Wash. 430, 230 Pac. 406. It is said that the bonds here in question indicate that they are payable *only* out of a certain fund, because the bonds contain the following provision:

"The Treasurer of the City of Billings, Montana,

will pay to Warren Construction Company, or bearer, the sum of Five Hundred and no-100 Dollars, as authorized by resolution, etc., as passed on the 6th day of June, 1922, creating Special Improvement District No. 196, for the construction of the improvement and the work performed as authorized by said resolution to be done in said district, and all laws, resolutions and ordinances relating thereto and in accordance therewith."

And by reason of the following provision contained therein:

"This bond is payable from the collection of a special tax or assessment which is a lien against the real estate within the Improvement District, and described in said Resolution hereinbefore referred to. This bond is redeemable at the option of the City at any time there are funds to the credit of said Special Improvement District Fund for the redemption thereof, and in the manner provided for the redemption of the same, provided, however, that payment shall not be made later than such time as will permit the levy of twelve annual consecutive tax levies after the date of the issuance thereof."

But, manifestly, these provisions do not state that the bond is payable *only* from a certain fund. These provisions indicate a particular fund out of which reimbursement is to be made, and the statute expressly provides that such provision does not make the bonds non-negotiable. In construing the words "as authorized by Resolution passed on the 6th day of June, 1922, etc." it must be borne in mind that bonds, warrants, notes, etc., are intended to be used as negotiable paper and that we should not give the words contained therein a construction which tends to prevent their negotiability, otherwise we have curtailed one of the important features of commercial paper. The words, "as authorized by resolution," would not, to my mind, indicate to the ordinary purchaser of such a bond anything

more than that the issuance of the bond was the result of due authorization.

It is interesting to make a comparison between the *Manker* case, *supra,* and this one. In that case the bonds provided that the holder should have no claim against the city *"except* from the special assessment made for the improvement for which the bond was issued.'' Another provision is that ''The City of Seattle hereby promises to pay . . . or bearer . . . out of the fund established by Ordinance No. 36562 of said City, and known as Local Improvement Fund District No. 3032, *and not otherwise.''* And further that, ''The holders or owners of this bond shall look *only* to said fund for the payment of either the principal or interest on this bond.''

Clearly, these provisions show that the bond is payable *only* out of a particular fund. In the instant case there is not a single provision in the bond to show that it was payable *only* out of a particular fund other than the statement that the bond is payable ''as authorized by resolution.'' These words also indicate the circumstances leading up to the transaction which caused the issuance of the bond. Section 3394, Rem. Comp. Stat., *supra,* as cited in the majority opinion, leaves out subdivision 2 thereof. It is provided in § 3394, *supra,* that, ''An unqualified order or promise to pay is unconditional within the meaning of this act though coupled with— . . . (2) A statement of the transaction which gives rise to the instrument.''

I am unable to conclude that the words ''as authorized by resolution'' mean anything more than a statement of the transaction which gave rise to the instrument.

In my judgment the bonds were negotiable and title thereto passed by delivery.

Main and Mackintosh, JJ., concur with Askren, J.