[No. 22691.   Department One.   January 22, 1931.]

HATTIE E. KECK, *Appellant,* v. YAKIMA SAVINGS & LOAN ASSOCIATION, *Respondent.*[1]

---

[1]Reported in 295 Pac. 483.

*Rigg, Brown & Halverson,* for appellant.

*Roberts & Roberts* and *Walter V. Swanson,* for respondent.

*Preston, Thorgrimson & Turner, amicus curiae.*

PARKER, J.—The plaintiff, Hattie E. Keck, commenced this action in the superior court for Yakima county against the defendant association, alleging in her complaint, as far as need be here noticed, as follows:

"(2) That on or about the 25th day of January, 1929, the above named plaintiff was the owner of six (6) Yakima County Road Refunding Bonds of 1925, being numbers 106, 107, 108, 109, 110, and 112, a copy of one of which said bonds is attached hereto and marked Exhibit 'A', and all of said bonds were of like tenor and effect except for the date of maturity.

"(3) That on, prior, and subsequent to that date Richard Ross was a dealer in bonds in the city of Yakima, and that prior to such date the plaintiff consulted the said Richard Ross relative to the delivering of the bonds held by her for bonds of the same kind, character, and description but of a later maturity, and that the said Richard Ross represented to the plaintiff that he had available such bonds of a later maturity, which could be traded to the plaintiff; and that on the said 25th day of January, 1929, the plaintiff delivered to said Richard Ross for the purpose of such trade, possession of the bonds described in paragraph two.

"(4) That on said 25th day of January, 1929, the said Richard Ross, with intent to deprive and defraud the owner thereof, feloniously embezzled said bonds and transferred and assigned the same to the defendant association, who purchased the same for value and without notice of plaintiffs' ownership thereof.

"(5) That the plaintiff did not learn of such embezzlement until the 5th day of August, 1929, and that on the 7th day of August, 1929, the plaintiff demanded the

possession of said bonds from the defendant, which said demand was refused.''

The copy of the bond attached to and made part of the complaint, reads as follows:

''YAKIMA COUNTY ROAD REFUNDING BOND OF 1925.

''KNOW ALL MEN BY THESE PRESENTS: That the County of Yakima of the State of Washington, is justly indebted and, for value received, hereby promises to pay to bearer, the sum of ONE THOUSAND DOLLARS on the First day of January, 1933, with interest thereon at the rate of 4½% per annum, payable semi-annually, on the first day of January and July of each year, both principal and interest being payable in gold coin of the United States, of the present standard of weight and fineness, at the office of the Treasurer of Yakima County, at Yakima, Washington, for the prompt payment whereof, both principal and interest, as the same mature, the full faith, credit and resources of the said County of Yakima are hereby irrevocably pledged.

''This bond is one of a series issued by the County of Yakima under the authority and in full compliance with the laws and constitution of the State of Washington, for the purpose of paying and refunding a like amount of the valid existing indebtedness of the County of Yakima, evidenced by its legally issued bonds as follows: $230,000 of Series A, Yakima County Road Bonds dated July 1, 1919, numbered 21-250, inclusive, and $45,000 of Series B, Yakima County Road Bonds, dated January 1, 1921, numbered 1-45 inclusive, Series A bonds maturing on the first day of July, 1934, and Series B Bonds maturing on the first day of January, 1936, pursuant to a resolution duly adopted by the Board of County Commissioners of Yakima County. It is hereby certified and recited that all acts, conditions and things required to be done precedent to and in the issuance of this bond, have happened, been done and performed as required by law.

''This bond is one of a series aggregating Two Hundred Seventy-five Thousand Dollars ($275,000.00), par value in amount, payable out of the 'Yakima County

Road Refunding Bond Fund' and secured to be paid by taxes and assessments upon all the property of Yakima County, and is a general obligation of said County. This bond is within every debt and other limit prescribed by the Constitution or laws of the State of Washington.

"A coupon is attached for each installment of interest to accrue thereon, and said interest shall be paid only on presentation and surrender of such coupon to the County Treasurer of Yakima County, at Yakima, Washington.

"IN WITNESS WHEREOF, The County of Yakima has caused its seal to be affixed, and this bond to be signed by the Chairman of the Board of County Commissioners and the County Auditor and ex-officio clerk of the Board of County Commissioners, and countersigned by the Treasurer of Yakima County, and the annexed coupons to bear the fac-simile of the signature of the Chairman of said Board and the County Auditor, this first day of January, 1925.

"YAKIMA COUNTY, WASHINGTON

By George Alexander Chairman of the Board of County Commissioners of Yakima County, Washington.

ATTEST: Edmund B. Riley County Auditor and ex-officio Clerk of the Board of County Commissioners of Yakima County, Washington.

Countersigned: Lillian Busch, Treasurer of Yakima County, Washington."

The plaintiff's prayer is for judgment against the defendant in the sum of $6,030, the alleged value of the bonds. The defendant demurred to the plaintiff's complaint upon the ground, among others, that it "does not state facts sufficient to constitute a cause of action." This demurrer was sustained by the superior court, and, the plaintiff electing not to plead further, final judgment of dismissal was rendered against her, from which she has appealed to this court.

The claim of recovery made in behalf of appellant, Hattie E. Keck, is rested principally upon the theory that the bonds in question are non-negotiable, and that, therefore, respondent association cannot maintain its claimed position of an innocent purchaser of the bonds for value.

We do not understand counsel for appellant to seriously contend that the bonds are, upon their face, that is, in terms, non-negotiable. If, however, we are wrong in this view of counsel's position, then it is, in any event, certain that counsel suggest no such want of apparent negotiability, save the recital in each bond that it is "payable out of the 'Yakima County Road Refunding Bond Fund,' " and that this language suggests payment only out of a special fund of that name, of some limited source. But, manifestly, those quoted words do not have any such restricted meaning, being followed by the words, "and secured to be paid by taxes and assessment upon all the property of Yakima county, and is a general obligation of said county." It is plain, we think, that the bonds are in all respects negotiable in form.

It is contended in behalf of appellant that, though the bonds may be negotiable in form, they are in any event non-negotiable in law, because of want of power in the county authorities to issue negotiable bonds of this character, that is, negotiable refunding bonds. Our statutory provisions relating to the issuance of refunding bonds by county, city and town authorities, so far as need be here noticed, referring to sections of Remington's Compiled Statutes, are as follows:

"§ 5617. Any county, city or town in the state of Washington which now has or may hereafter have an outstanding indebtedness evidenced by warrants or bonds, . . . may, by its corporate authorities, provide by ordinance or resolution for the issuance of

funding bonds with which to take up and cancel such outstanding indebtedness in the manner hereinafter described, said bonds to constitute general obligations of such county, city or town: . . ."

Sections 5618, 5619, 5620, prescribe the conditions under which the bonds may be issued, and the manner of their issuance. It is not claimed that any of the prescribed conditions are lacking, or that the manner of the issuance of the bonds is, in any respect, without the statutory power of the county authorities, other than that, since none of the statutory provisions in terms authorizes the issuance of "negotiable bonds," this results in there being no power in the county authorities to issue the bonds in negotiable form. We are of the opinion, however, that the law is that general express, statutory power, giving municipal authorities power to issue bonds to evidence municipal indebtedness, means, under all ordinary circumstances, power to issue negotiable bonds. In the text of 2 Dillon, Law of Municipal Corporations (5th ed.), § 882, that learned author says:

"The general power to issue 'bonds' must be taken to authorize bonds in the usual form of such well-known commercial obligations. The usual form embodies a contract and obligation negotiable in its terms. Money may be borrowed by a city upon a non-negotiable instrument, but in order to obtain advantageous terms and to enter the markets of the world in fair competition for the use of money it must issue commercial paper. Therefore, when power to issue bonds is expressly conferred, the municipality has of necessity, or by fair construction, the power to give to these bonds the usual commercial attributes of negotiability."

In 10 R. C. L. 993 and 6 McQuillin, Municipal Corporations (2d ed.), § 2440, the same view of the law is announced. Among the numerous decisions sustain-

ing these texts, we note the following: *Denver v. Home Savings Bank,* 236 U. S. 101; *City of Cadillac v. Woonsocket Inst. for Savings,* 58 Fed. 935; *Bushnell v. Beloit,* 10 Wis. 155; *Nalle v. City of Austin,* 22 S. W. (Tex.) 668; *Town of Klamath Falls v. Sachs,* 35 Ore. 325, 57 Pac. 329; *Hunter v. City of Louisville,* 208 Ky. 326, 270 S. W. 841. We conclude, therefore, that the county authorities impliedly had the power to issue the bonds in negotiable form, and obligate the county accordingly, unless we must hold, as counsel for appellant further contend, that the bonds are payable only from a special fund of a limited resource.

▮ This contention is rested upon the language of the bonds, above noticed, and upon § 5621, Rem. Comp. Stat., reading as follows:

"The corporate authorities of any such county, city or town shall provide annually by ordinance or resolution for the levy and extension on the tax-rolls of such county, city or town, and for the collection thereof, of a direct annual tax in addition to all other county, city or town taxes to be levied according to law, which shall be sufficient to meet the interest on all of said bonds promptly as the same matures, and also sufficient to fully pay each series of bonds as the same matures: . . ."

The language of the bonds does not, in terms, restrict their payment from the "road refunding bond fund," nor does § 5621 of the statute place any limitation upon the prescribed general tax levy, to be made annually for their payment. The statutory mandate is that it shall be sufficient to pay the bonds and interest as they mature. Thus, as we have already noticed, there is an unlimited general taxing power pledged by the terms of the bonds, and by the terms of the statute, to secure the payment of their principal and interest. Our problem, then, becomes wholly different from that presented in *Manker v. American*

*Savings Bank & Trust Co.*, 131 Wash. 430, 230 Pac. 406, and *Jones v. American Savings Bank & Trust Co.*, 139 Wash. 598, 247 Pac. 1017, involving bonds which were payable only from special local assessment funds. They were not general obligations, for the payment of which the unlimited general taxing power of the county was pledged, as are these bonds.

We conclude that the bonds are negotiable in form; that the county authorities were empowered to so issue them; that they are general obligations of the county; and that the respondent association, having acquired them in good faith for value, is not liable to appellant for her loss of them. The law of respondent's rights, under these circumstances, is well stated in the text of 3 R. C. L. 1000, as follows:

"It is familiar law that one in possession of chattels by theft can convey no title to an innocent purchaser. Coin and bank bills, however, are excepted from the rule. As to those, even if feloniously obtained, the holder can convey a good title to an innocent purchaser. And from the highest considerations of public policy, the law also excepts from the rule negotiable instruments acquired for value in good faith before maturity and without notice. Such paper takes the place and performs, to a large extent, the office of money. It is used for the transaction of much the largest part of the business of mankind. It would be most embarrassing, therefore, if every taker of such paper was bound, at his peril, to inquire into the title of the holder, and if he was obliged to take it with all the imperfections and subject to all the defenses which attach to it in the hands of the holder. It has, therefore, become the settled rule that a thief or any other person having possession of such paper fair upon its face can give a holder in due course a good title to it, against all the parties thereto, as well as the true owner. It may be taken, then, to be the well-settled rule of law that the transfer of stolen commercial paper, negotiable by delivery, to a bona fide purchaser, for value,

without notice and before maturity, vests him with a good title against all the world.''

It is finally contended in behalf of appellant that our criminal procedure statute establishes an exception to the general rule last above noticed, citing Rem. Comp. Stat., § 2129, reading as follows:

"All property obtained by larceny, robbery, or burglary, shall be restored to the owner; and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his rights to such property; and it shall be the duty of the officer who shall arrest any such person charged as principal or accessory in any robbery or larceny, to secure the property alleged to have been stolen, and he shall be answerable for the same, and shall annex a schedule thereof to his return of the warrant.''

At least one conclusive answer to this contention is that these bonds were not obtained from appellant "by larceny, robbery or burglary,'' and therefore this section of our criminal procedure statute can in no event have any controlling force touching our present inquiry. *Linn v. Reid,* 114 Wash. 609, 196 Pac. 13; *Harris v. Northwest Motor Co.,* 116 Wash. 412, 199 Pac. 992.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, MAIN, and HOLCOMB, JJ., concur.