**FIDELITY NAT. BANK & TRUST CO. OF KANSAS CITY v. McNEAL.**

**No. 843.**

Circuit Court of Appeals, Tenth Circuit.

Nov. 16, 1933.

Robert B. Fizzell, of Kansas City, Mo. (Roscoe E. Harper, of Tulsa, Okl., on the brief), for appellant.

G. G. Hilford, of Tulsa, Okl. (Powell Clayton, of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

Appellant, a corporation domiciled at Kansas City, Mo., instituted this suit to recover from appellee certain securities in the nature of paving certificates, commonly called tax bills, issued by the city of Tulsa in Oklahoma, to Standard Paving Company, on April 29, 1924, in payment of pavement and other street improvements. The securities are not general obligations of the city; they are special obligations payable exclusively from the proceeds of special assessments made against the property improved. Standard Paving Company sold them to Hanchett Bond Company, a brokerage and commission company in Chicago engaged in the business of buying, selling, and dealing in municipal securities. At the time of such sale, the following indorsement was placed on the back of each of such securities:

"For value received this Special Tax Bill and the lien thereof is hereby assigned to ——— who will receipt for payment of same. Dated ———.

"Standard Paving Company,
"H. V. Gray."

The securities were then transferred to Municipal Securities Corporation of Chicago, a subsidiary of Hanchett Bond Company, for the purpose of disposing of municipal and other securities, the transfer being effected by mere delivery. Hanchett Bond Company and Municipal Securities Corporation occupied and transacted business at the same offices and through the same employees; the former corporation paid all of the employees of the latter with one exception; the officers, directors, and stockholders were virtually the same; William F. Hanchett was president and dominating officer of both of them. Much of the business of Municipal Securities Corporation was conducted on stationery of Hanchett Bond Company and under the name of that company.

On December 19, 1928, Municipal Securities Corporation and appellant, acting as trustee, entered into a written indenture under which it was provided that securities

would be deposited with the latter from time to time and held by it to secure collateral trust gold bonds issued by the former and sold to the public. The indenture contains the following provisions:

"So long as there shall have been no default by the Company thereunder, or under said collateral trust gold bonds or coupons, the Company shall be entitled to receive from the Trustee, and the Trustee shall deliver to the Company, without requiring substitutes therefore, at any time, on written demand of the Company, for the purpose of collection or for suit to collect any of said securities or their coupons whether such coupons represent interest, or interest and principal which may be past due or which may become due within thirty days; but such securities and coupons so delivered and received and their proceeds shall be held in trust by the Company for the benefit of the holders of bonds secured hereby, and, so long as said bonds or coupons so secured shall remain unpaid no part of such proceeds shall ever be applied except to the payment of said bonds or the interests thereon. The Trustee shall not be responsible for any failure of the Company to account for any such securities so delivered to it. Whenever requested by the Company, and to the end that they may be paid in advance of maturity the Trustee shall cause any of said securities to be presented for payment at the place specified, although by their terms payment is not due but is optional with the property owner or party owing the indebtedness; and the Trustee shall collect all such securities when the maturity thereof is thus anticipated, and shall hold the proceeds in lieu of such securities, but shall pay over the same to the company if other securities are substituted therefor as by the second paragraph of Article VIII hereof provided, the Trustee having received no notice of default hereunder.

"The Company may at any time withdraw from the Trustee any securities deposited hereunder, including securities originally deposited hereunder or any substitutes, upon depositing other securities of the same character as required by Article II for securities originally deposited, of not less in present value than those withdrawn, accompanied by a certificate of counsel selected by the Company stating that the new securities are valid in the opinion of such counsel and accompanied also by a certificate of the President, Vice-President, Secretary or Assistant Secretary of the Company that the securities are not in default in the payment of either interest or principal; or the company may at any time withdraw any securities held by the Trustee hereunder, upon depositing with the Trustee in lieu thereof a sum of money equal to the present value of the securities so withdrawn.

"If cash is substituted for securities as authorized hereby, the Company may thereafter substitute new securities for such cash, such new securities to be accompanied by the certificates referred to in this article where substitutions of securities are made for securities then on deposit. The provisions of this Article VIII shall not affect the provisions of Article V hereof, which Article permits withdrawals for collections without substitutions. The Trustee shall be absolutely protected in acting upon the certificates provided for in this article. Any substituted securities or any cash deposited in lieu of securities shall continue to be held as collateral security for the bonds secured hereby.

"But all withdrawals and substitutions shall be had and made under the limitations of Article III of this instrument; to the end that the securities of each series shall be separately administered and accounted for.

"Not only shall any collection of said securities which come or may come under the operation hereof when collected by the Company be held for and on account of the Trustee as the proceeds a special trust fund, but any suit which may be prosecuted and any judgment or decree which may be obtained by or in the name of the Company on or in connection with any such securities shall be deemed to be the property of the Trustee for the use and benefit of the bondholders hereunder, and may be enforced by the Trustee, this instrument operating as an assignment for that purpose."

Municipal Securities Corporation deposited the paving certificates involved here, aggregating $4,666.95 at the time this action was instituted, with the trustee, under the provisions of such indenture, to secure an issue of its bonds, a part of such certificates having been thus deposited on December 12, 1929, and the others on February 20, 1931. On October 30, 1931, and long prior to the maturity of such tax bills, Securities Corporation withdrew all of them from appellant, giving it two receipts called "Trust Receipts." Beginning on or about October 3, 1931, Hanchett Bond Company entered into negotiations with appellee for the sale and purchase of the securities. The negotiations continued until on or about November 2d, when the sale was effected. Appellee paid Hanchett Bond Company value for them without notice

on his part of appellant's interest in them. The proceeds of the sale were not delivered to appellant. Hanchett Bond Company is in bankruptcy. After making extended findings of fact and conclusions of law, the trial court rendered judgment for appellee.

Appellant contends that the paving certificates are not negotiable instruments and that for such reason, appellee acquired them subject to its equities. Sections 11300 and 11302, Statutes of Oklahoma 1931, provide, respectively:

"An instrument to be negotiable must conform to the following requirements:

"First.    It must be in writing and signed by the maker or drawer;

"Second.    Must contain an unconditional promise or order to pay a sum certain in money;

"Third.    Must be payable on demand, or at a fixed or determinable future time;

"Fourth.    Must be payable to order or to bearer; and

"Fifth.    Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty.

"An unqualified order or promise to pay is unconditional within the meaning of this chapter, though coupled with:

"First.    An indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount; or

"Second.    A statement of the transaction which gives rise to the instrument.

"But an order or promise to pay out of a particular fund is not unconditional."

■ These provisions are part of the Uniform Negotiable Instruments Act adopted in many states. The certificates in question do not meet the requirements of the statutes; they are not an unconditional promise to pay. On the contrary, they merely certify that the improved property has been assessed the specified sum and that the certificates will be paid out of the proceeds arising from the collection of the assessment. The city executed the instruments: Its obligation consists, first, to make the assessment and, second, to pay the certificates out of the proceeds if the assessment is collected. Thus payment rests upon a contingency and is to be made from a special fund. That renders the certificates nonnegotiable. Logan County Bank v. Farmers' National Bank, 55 Okl. 592, 155 P. 561; Morrison v. Austin State Bank, 213 Ill. 472, 72 N. E. 1109, 104 Am. St. Rep. 225; Manker v. American Savings Bank & Trust Co., 131 Wash. 430, 230 P. 406, 42 A. L. R. 1021; Jones v. American Savings Bank & Trust Co., 139 Wash. 598, 247 P. 1017.

■ Counsel discuss eruditely the distinctive and essential differences between an assignment in trust and a pledge. It is unnecessary to a decision of this case to determine which the delivery of the securities to the trustee constituted. Despite the fact that they are nonnegotiable and regardless of whether their delivery constituted an assignment in trust or a pledge, appellant is not entitled to recover. It had them in its rightful possession under the contract to which reference has been made. It delivered them to Municipal Securities Corporation, without the existence of any of the conditions specified in the provisions of the trust agreement, above quoted. On the contrary, the record discloses clearly that Hanchett Bond Company withdrew them for the purpose of consummating a sale to appellee, such sale having been under consideration for almost a month. At the time they were so delivered, they bore the blank indorsement of Standard Paving Company, their original owner. Appellant indorsed nothing on them to indicate its ownership of them or interest in them. It thereby clothed Municipal Securities Corporation with every indicia of ownership. Hanchett Bond Company and Municipal Securities Corporation were one in law. Accordingly, the sale made in the name of the former was the sale of the latter. Having clothed that company with every indicia of ownership, and appellee having acquired the securities in good faith, for value, and without notice of appellant's interest, it is estopped to assert that interest to defeat appellee.

The early case of Scollans v. Rollins, 179 Mass. 346, 60 N. E. 983, 984, 88 Am. St. Rep. 386, was one for the conversion of two certificates of indebtedness issued by the city of Boston. Scollans, the owner, assigned them in blank and then deposited them for safekeeping with Gage. Gage later pledged them to Felton; the pledgee sold them at auction and they were purchased by Rollins and Sons. After discussing the rights of the owner to securities stolen and then placed into circulation, Judge Holmes, speaking for the court, said:

"But if the owner of the instrument entrusts it to another, he does so charged with notice of the power to deceive which he is putting into that other's hands, and if deception follows he must bear the burden. [Authorities here cited are omitted.] In this case, as in some others, it cannot be said that the owner is free from all obligation to contemplate the possibility of wrong-doing by a third person."

Cowdrey v. Vandenburgh, 101 U. S. 572, 575, 25 L. Ed. 923, involved a certificate made by the auditor of the city of Washington, certifying that the sum of $8,451.88 was due J. V. W. Vandenburgh & Co. for work done on Columbia street. The owners of the certificate borrowed $3,160 from Blumenburgh for six months; they indorsed the certificate in blank and deposited it as collateral security for the loan. When the loan matured it developed that Blumenburgh had absconded and that the certificate likewise could not be found. It subsequently was learned that Cowdrey had acquired it for value and without actual notice of the owners' equity in it. The complainants contended that, since the instrument was not negotiable, he was charged with notice of such interest. In making disposition of the question, the court said:

"That the purchasers of non-negotiable demands, like the certificate here, from others than the original owner of them, can take only such rights as he has parted with, except when by his acts he is estopped from asserting his original claim, is established by all the authorities. He must in such case, as Lord Thurlow said, abide by the case of the person from whom he buys. * * *

"If the pledgee, Blumenburgh, had written over the blank indorsement of the complainants a formal assignment to himself of the claim, and in that form had sold the certificate to Cowdrey for value, it is possible that the latter might have successfully insisted that the complainants were estopped from asserting, as against him, ownership of the claim. The principle is well settled that when the owner of property in any form clothes another with the apparent title or power of disposition, and third parties are thereby induced to deal with him, they shall be protected."

In the later case of National Safe Deposit, Savings & Trust Co. v. Hibbs, 229 U. S. 391, 33 S. Ct. 818, 820, 57 L. Ed. 1241, the court had under consideration title to certain stock certificates standing originally in the name of T. M. Kelly and by him indorsed in blank on the back thereof. Kelly deposited them as collateral security to a loan from a bank; Myers, an employee of the bank, without the knowledge or consent of the bank or that of Kelly, caused them to be sold by a broker on the local stock exchange and received the proceeds thereof. The court expressed its views thus:

"Here one of two innocent persons must suffer and the question at last is, Where shall the loss fall? It is undeniable that the broker obtained the stock certificates, containing all the indicia of ownership and possible of ready transfer, from one who had possession with the bank's consent, and who brought the certificates to him, apparently clothed with the full ownership thereof by all the tests usually applied by business men to gain knowledge upon the subject before making a purchase of such property. On the other hand, the bank, for a legitimate purpose, with confidence in one of its own employees, intrusted the certificates to him, with every evidence of title and transferability upon them. The bank's trusted agent, in gross breach of his duty, whether with technical criminality or not is unimportant, took such certificates, thus authenticated with evidence of title, to one who, in the ordinary course of business, sold them to parties who paid full value for them. In such case we think the principles which underlie equitable estoppel place the loss upon him whose misplaced confidence has made the wrong possible. Applying this principle, we think the Court of Appeals was right in affirming the judgment of the Supreme Court, and its judgment is affirmed."

So, here, appellant intrusted the securities in question to Municipal Securities Corporation; it betrayed that confidence; appellee purchased in good faith, paying value and without notice of the true facts.

The case of New York Life Insurance Co. v. Rees (C. C. A. 8) 19 F.(2d) 781, 784, is illuminating in declaring the doctrine which is considered decisive of this case, although it is based upon a different state of facts. There, Rees and wife executed an absolute assignment of a life insurance policy containing a cash surrender clause and delivered it to a bank as collateral security for a loan. The bank applied to the insurance company for payment of the cash surrender value of the policy. It was paid and the policy was surrendered. Rees died and his wife instituted the suit to recover upon the policy, contending, among other things, that, although the assignment was absolute on its face, in fact it was a mere pledge; that the

pledge had not been foreclosed as required by the laws of Oklahoma, and, consequently, payment of the cash surrender value did not foreclose her right to recover. The insurance company countered with the contention that the assignment was absolute on its face; that since plaintiff and her husband had clothed the bank with indicia of ownership and since the insurance company had acted upon it, without knowledge of the facts, she was estopped to assert otherwise. Judge Sanborn said:

"The next contention of counsel for the insurance company is that the plaintiff as against it is estopped by the absolute assignment of the policy, which she and her husband signed and delivered to the bank and in reliance upon which it paid the surrender value of the policy, from claiming or defending on the ground that the assignment was a mere pledge and that the court erred in its charge that the insurance company had no better title than the bank. The general rule of law that the owner of property who clothes another with the apparent title or power of disposition of it whereby a third party is induced to purchase or deal with it to his injury is estopped as against the latter from denying that the apparent was not the true title is familiar and indisputable. Indispensable elements of such an estoppel are (1) intentional or careless misrepresentation of known and material facts inconsistent with the subsequent claim of the party who invokes the misrepresentation; (2) ignorance of the truth and absence of equal means of knowledge of the party who claims the estoppel; (3) action by the latter, induced by the misrepresentation; and (4) injury to the latter if the truth be permitted to be proved."

The court then held that estoppel was an affirmative defense; that because the insurance company failed to plead the facts as such, the defense had been waived. Not so here. Appellee expressly pleaded the facts as constituting estoppel, thus bringing himself squarely within the doctrine there declared.

In Rosenkranz v. Guaranty Trust Co., 160 Wash. 548, 295 P. 487, the court dealt with certain drainage district bonds, delivered to an agent for the purpose of exchanging them for other securities. Instead of making the exchange, the agent disposed of them and converted the proceeds to his own use. The original owner asserted that, since they were nonnegotiable, the purchaser was charged with notice of her ownership. The court said that question need not be decided, because through the application of the well-recognized doctrine of comparative innocence, plaintiff could not recover. That doctrine, adverted to in some of the cases already cited, precludes appellant's recovery here. Apart from the fact that appellant delivered the certificates without the existence of any of the circumstances authorizing such delivery under the provisions of the contract previously quoted, and assuming that it is innocent, certainly under the authorities just reviewed concerning the rights of a person acquiring securities from one clothed with full indicia of ownership, appellee is entirely innocent. He exercised that degree of care and caution required of a reasonably prudent man under the circumstances. He resided at Tulsa and inquired of both Standard Paving Company and the commissioner of finance and revenue of the city with respect to the ownership of the certificates. The paving company advised him that they had been sold to Hanchett Bond Company and the commissioner told him that since such sale payments had been made to that company. He examined the certificates before accepting them and found only the blank indorsement of Standard Paving Company on them. By delivering the securities to Municipal Securities Corporation, appellant enabled that company, with every indicia of ownership, to make the sale to appellee, followed by its failure to account for the proceeds. Having thus enabled that company to occasion the loss, appellant must bear it. Scherer & Co. v. Everest (C. C. A. 8) 168 F. 822; Joy v. Godchaux (C. C. A. 8) 35 F.(2d) 649; MacAndrews & Forbes Co. v. United States (C. C. A. 3) 23 F.(2d) 667; Federal Intermediate Credit Bank v. Mitchell (C. C. A. 4) 46 F. (2d) 301.

The judgment is affirmed.