[No. 27362. Department Two. December 6, 1938.]

LEVERETT G. RICHARDS, *Appellant,* v. CLARK COUNTY *et al., Respondents.*[1]

[1]Reported in 84 P. (2d) 1009.

*George S. Hayden,* for appellant.

*Eugene G. Cushing* and *Preston, Thorgrimson & Turner,* for respondents.

SIMPSON, J.—Plaintiff, appearing in the capacity of a taxpayer, instituted this action to restrain the board of county commissioners of Clark county from issuing and selling bonds voted by the people for the purpose of building a court house. The trial court sustained a general demurrer to the complaint, plaintiff elected to stand upon his complaint, and the court entered judgment dismissing the action. This appeal followed.

The two assignments of error urged by plaintiff are in sustaining a demurrer to the complaint, and in dismissing the action.

The complaint, omitting formal parts, is as follows: That August 19, 1938, the board of county commissioners passed a resolution entitled "In the Matter of the Issuance of Clark County 1938 General Obligation Court House Bonds;" that the resolution called for a special election to be held September 13, 1938, at which time there was submitted to the qualified voters of Clark county the proposition of issuing general obligation bonds in the principal sum of three hundred thousand dollars, bearing interest payable semi-annually at a rate not to exceed four per cent, and maturing serially in from two to twenty years. Then followed an allegation to the effect that, when the question was submitted to the people, it was approved by a vote in excess of three-fifths of those who voted at the election, and exceeded fifty per cent of the number voting at the next preceding general election. It appeared from the complaint that the last assessed valuation for state and county purposes was $20,686,021.00, and that the net indebtedness was $114,480.45; and the average millage necessary to retire the bonds would be 1.09 mills.

The resolution, which by reference was made a part of the complaint, recited that the Clark county court house and jail, erected nearly fifty years ago, is totally inadequate to serve the present needs of the county, and constitutes a grave sanitary and fire hazard; that recent surveys show that the building is dark, difficult to repair and maintain in a sanitary condition; that the plumbing facilities are worn and should be replaced, the electric wiring is defective and constitutes a fire hazard; that the building as a whole constitutes a serious danger to the various employees and others using the building, including the occupants of the jail; and that the various county records kept in the building are in great danger of being destroyed by fire, to the irreparable damage of the county.

After these recitals, the resolution provided:

"That in the opinion of said Board said County can safely agree to specifically pledge a sufficient portion of its statutory tax millage to pay the principal and interest of said bonds as they accrue, and that there will be sufficient funds left available over and above the amount so pledged to pay the necessary governmental expenses of said county."

The resolution further provided that general obligation bonds of the county be issued in the principal sum of $300,000, and further that there should be levied each year by the corporate authorities a tax upon all the property in the county subject to taxation in an amount sufficient to pay the interest and principal of the bonds as the same accrue; that the county irrevocably pledged itself that the annual tax to be levied for the payment of the bonds should be within and as a part of the ten mill limitation of taxes permitted to counties without a vote of the people.

After ascertaining the necessity for the erection of a court house, it was the duty of the board of county commissioners to provide for the new building.

Appellant contends that the resolution passed by the county commissioners was illegal and void, in that it attempted to specially pledge future annual levies of taxes in order to retire the bonds; and that the county commissioners, in creating the fund out of which to retire the bonds, in effect attempted to bind the action of future boards.

It is true that any issue of general obligation bonds pledges payment of future tax levies and to that extent controls the action of future boards of county commissioners. The issuance of the bonds presupposes that funds will be provided in the future to pay them, but that fact does not render the resolution or the bonds issued invalid.

Rem. Rev. Stat., §§ 5575, 5576, and 5577 [P. C. §§ 5405, 5406, and 5407], give the authority to contract indebtedness for general county purposes by a vote of the people up to five per cent of the assessed valuation.

Rem. Rev. Stat., § 5580 [P. C. § 5410], provides:

"Ten years before said bonds shall become due, the county commissioners of the county issuing them are hereby authorized and required annually to levy a tax sufficient to liquidate the said bonds at maturity. Such tax shall be collected and kept as a separate fund for the sole purpose of liquidating the said bonds, in accordance with the following section."

Rem. Rev. Stat., § 5583-2 [P. C. § 5470-12], states:

"The officials now or hereafter charged by law with the duty of levying taxes for the payment of said bonds and interest shall, in the manner provided by law, make an annual levy sufficient to meet the annual or semi-annual payments of principal and interest on said bonds maturing as herein provided."

It is apparent that these statutes give county commissioners the necessary legal machinery with which to provide funds to meet the demands made by law

relative to the construction of court houses. It is equally apparent that the legislature has authorized counties to arrange for the payment of the principal and interest due upon the bonds issued to provide the building funds. The specific pledge of tax levies to retire bonds is incidental to and included in the express right to issue them. *Keck v. Yakima Sav. & Loan Ass'n,* 160 Wash. 430, 295 Pac. 483.

■ Appellant argues, however, that initiative measure No. 114 (Laws of 1937, chapter 1, p. 3, § 1), Rem. Rev. Stat. (Sup.), § 11238-1b [P. C. § 6882-77c], known as the forty mill tax law, prohibits the levying of taxes to retire bonds issued by the county unless such bonds are outstanding at the time of the passage of the act (November 3, 1936).

An examination of the act discloses that the provisions to which we have just referred relate only to the levying of taxes additional to the ten mills allowed to counties. There is nothing in the act which prohibits the levying of taxes to pay bonds issued after the passage of the act, provided the limitation of ten mills is not exceeded.

In this connection, it must be borne in mind that the resolution questioned recites that the taxes levied to pay interest and principal on the bonds are to be levied within the ten mill limitation.

The case of *Van Diest v. Yakima County,* 189 Wash. 411, 65 P. (2d) 1080, is determinative of the questions presented by this appeal. In that case, the county commissioners of Yakima county authorized the issuance of general obligation bonds to fund outstanding emergency current expense fund warrants, and, in so doing, allocated particular portions of the tax revenues to the liquidation of the principal and interest of the bonds. In passing upon the objections presented in that case, this court held:

"Appellant argues that the county commissioners have no authority to allocate a particular portion of tax revenues for the purpose of paying principal and interest on these bonds. This argument is predicated upon the rule that counties have no powers of taxation, except such as are expressly granted to them by the legislature. The argument, however, fails to take into account the distinction between the levy of taxes and the expenditure of tax revenues. Power to allocate tax revenues is implied in the authority to expend them for purposes authorized by the legislature.

"Again, appellant points out that, if deficits in the budget are met in this manner over a considerable number of years, a substantial portion of tax revenues will be pledged to the retirement of bonds; that, as a result, the county may become seriously handicapped in carrying on its ordinary governmental functions. Such a condition is obviously possible, but that presents a problem which is, in the first instance, administrative and in the second, legislative. Clearly, it is not a judicial problem."

We are of the opinion that the resolution as passed by the county commissioners was legal in every respect, and that the bonds issued by the authority of the resolution and the vote of the people of Clark county are valid.

The judgment is affirmed.

STEINERT, C. J., BEALS, ROBINSON, and GERAGHTY, JJ., concur.