[No. 16083. *En Banc.* February 23, 1921.]

FRANK LINN, *Respondent*, v. C. W. REID, *Appellant.*[1]

SALES (96, 99)—RIGHTS OF BUYER—TITLE OF BONA FIDE PURCHASER —GOODS OBTAINED BY FALSE PRETENSES. Where the owner of an automobile voluntarily delivered the possession with the intent to pass the title in a trade for another car, which had been stolen, without any element of trespass on the part of his vendees, a *bona fide* purchaser of his car from such vendees is protected under the rule that, where one of two innocent persons must suffer by the fraud of a third, the loss must fall upon the one who made it possible.

STATUTES (56, 65)—CONSTRUCTION—INTENT—HISTORY OF ACT. In construing an act, the history of the act, the ordinary use of words at the time of the passage of the act and the meaning adopted at that time, should be considered.

LARCENY (1)—STATUTORY PROVISIONS—DISTINGUISHED FROM FALSE PRETENSES. Rem. Code, § 2129, providing that all property obtained by "larceny . . ." shall be restored to the owner and no sale shall divest the owner of his rights, has reference to "larceny" as defined by that act (Laws 1854, p. 83 *et seq.*, §§ 45, 46, 55), which did not include obtaining money by false pretenses, which was a distinct offense under Id., § 54, although larceny as now defined includes that offense; hence property obtained by false pretenses does not fall within the protection of § 2129, and may pass to *bona fide* purchasers from the wrongdoers.

HOLCOMB, J., dissents.

[1]Reported in 196 Pac. 13.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered January 10, 1920, upon findings in favor of the plaintiff, in an action of replevin, tried on the merits to the court. Reversed.

*A. O. Burmeister* and *Remann & Gordon,* for appellant.

*O. S. Galbreath,* for respondent.

MITCHELL, J.—The facts in this case are not in dispute. Those pertinent to the decision are substantially as follows: On November 8, 1919, the plaintiff, a resident of Lewis county, was the owner of a Maxwell car; on that day two persons, driving a Hudson car which they had stolen from its owner in Portland, traded it to the plaintiff for the Maxwell car, each giving to the other the possession of the car traded for; thereafter the lawful owner of the Hudson car caused the plaintiff to surrender it; on November 15, 1919, the plaintiff found the Maxwell car in the possession of the defendant, who, on November 10, 1919, had purchased it from the persons who had obtained it in the trade with the plaintiff; the defendant paid to the two men for the Maxwell car the sum of $275, which was its reasonable value; before the purchase, the defendant, upon inquiry, was informed by the two men that they were from Centralia, Washington, were butchers by occupation, and that they were desirous of selling the Maxwell car as they were moving to the city of Tacoma; the defendant's refusal of plaintiff's demand to deliver the car resulted in this action of claim and delivery.

The trial resulted in findings of fact substantially as above set out, to which no exceptions were taken. From the findings the court concluded the defendant was a *bona fide* purchaser of the Maxwell car, but that the

plaintiff was the lawful owner of it and entitled to recover possession of it. From a judgment in favor of the plaintiff, the defendant has appealed.

In considering the case, sight must not be lost of the manner in which respondent surrendered his car. He traded it and delivered possession of it to the two persons who traded and delivered to him possession of the Hudson car. There was no element of trespass on the part of the two persons in getting the Maxwell car. It was voluntarily surrendered by the respondent who parted with possession of it with intent to pass title to the wrongdoers, thus giving to them all the *indicia* of ownership and the apparent right of disposal. Under such circumstances, in the absence of a statutory rule to the contrary, a *bona fide* purchaser from the vendee will be protected. It is but the enforcement of the old and familiar rule that, of two innocent persons one of whom must suffer by the fraud of a third person, he who has put it in the power of such third person to commit the fraud must be the sufferer. The basis of protection to the *bona fide* purchaser, in cases such as the present one, is the voluntary act of the original vendor in parting with both the title to and possession of the property. Unless this difference in the manner in which property is acquired from its lawful owner is kept in mind—that is, whether by trespass, or by the voluntary act of the lawful owner—a misunderstanding of the well-reasoned cases may follow.

In the case of *Cochran v. Stewart,* 21 Minn. 435, it was said:

"The true rule, as we think, is that in case of the sale and delivery by the owner of personal property, although he may have been induced to make such sale and delivery by fraudulent acts and representations of the vendee, amounting to a felony by statute, the

vendee may convey a good title to a *bona fide* purchaser.''

The same principle is clearly set forth and approved by this court in the case of *Woonsocket Rubber Co. v. Loewenberg Bros.,* 17 Wash. 29, 48 Pac. 785, 61 Am. St. 902, quoting with approval from the case of *Barnard v. Campbell,* 58 N. Y. 73. Other authorities to the same effect are: Benjamin, Sales (7th ed.), §§ 433 *et seq.;* 24 R. C. L. 378, § 665; 35 Cyc. 361-2, par. g.

Respondent contends the case of *Globe Milling Co. v. Minnesota Elev. Co.,* 44 Minn. 153, 46 N. W. 306, repudiates the doctrine of the *Cochran v. Stewart* case, *supra.* We do not so understand. Only a casual reading of that case shows it turned upon the question of delivery of the property; it having been found the owners had never delivered the personal property, and hence there was no element of estoppel against their claiming against one who claimed to be a purchaser from the owner's vendee. For that reason, it was held the rule in the case of *Cochran v. Stewart, supra,* did not apply.

Respondent's counsel, however, calls attention to § 2129, Rem. Code, which is as follows:

''All property obtained by larceny, robbery, or burglary, shall be restored to the owner; and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his rights to such property; . . .''

And § 2601 (Id.), which is as follows:

''Every person who, with intent to deprive or defraud the owner thereof—(1) Shall take, lead or drive away the property of another; or (2) Shall obtain from the owner or another the possession of or title to any property, real or personal, by color or aid of any order for the payment or delivery of property or money or any check or draft, knowing that the maker or drawer of such order, check or draft was not author-

ized or entitled to make or draw the same, or by color or aid of any fraudulent or false representation, personation or pretense or by any false token or writing or by any trick, device, bunco game or fortune-telling; or (3) . . .; or (4) . . .; and (5) . . .; Steals such property and shall be guilty of larceny.''

Therefrom it is argued that appellant's vendors having obtained the car from respondent under circumstances amounting to larceny, therefore, under the express provisions of § 2129 of the code, the sale of the car to the appellant, whether he purchased it in good faith or not, did not divest the respondent of his right to the property.

An examination of the history of this legislation, coupled necessarily with the intent of the legislature in enacting § 2129 of the code, will show that the judgment in this case cannot rest upon this contention of the respondent. The question here turns not upon the meaning to be given to that portion of § 2601 (Id.), defining larceny applicable to the act of appellant's vendors in obtaining the car from the respondent (subdivision 2, obtaining goods by false pretenses), but upon the meaning of § 2129 preserving property rights in stolen goods—that is, goods obtained by larceny, robbery or burglary, as those terms were understood and intended to be used by the legislature at the time it enacted what is now § 2129 of Remington's Code.

The first territorial legislature of 1854 enacted the following laws, viz.:

Laws of 1854, p. 83, §§ 45 and 46, defining grand and petit larceny, each of which required the feloniously stealing, taking and carrying, leading or driving away the personal property or goods of another. Section 53, p. 84:

"Every person who shall falsely represent or per-
sonate another, and in such assumed character, shall
receive any money or other property whatever in-
tended to be delivered to the party so personated, with
intent to convert the same to his own use, shall be
deemed guilty of larceny."

Section 55, p. 85, embezzlement of money or other
property, declared to be larceny.

Section 51, p. 84:

"All property obtained by larceny, robbery or burg-
lary, shall be restored to the owner, and no sale,
whether in good faith on the part of the purchaser or
not, shall divest the owner of his rights to such prop-
erty; . . . ".

And section 54, p. 85:

"If any person with intent to defraud another, shall
designedly by color of any false token or writing, or
any false pretense, obtain from any person any money,
transfer, note, bond or receipt, or thing of value, such
person, shall, upon conviction thereof, be imprisoned
in the penitentiary not more than five nor less than
one year, or imprisoned in the county jail for any
length of time not exceeding one year."

All six of these sections are found in the same chap-
ter—ch. 3, p. 82, of the Laws of 1854. They were con-
tinued in force, and without change carried into the
code of 1881, and are found therein at §§ 830, 831, 834,
835, 851 and 853, pp. 166-170. In 1909, the legislature
re-defined larceny by including therein, for the first
time, acts consisting of obtaining goods by false pre-
tenses (Laws of 1909, § 349, p. 997). In 1915, it was
re-enacted with a slight change, not material here
(Laws of 1915, § 3, p. 493), in which form it is now
§ 2601, Rem. Code.

During all this time, the legislature has in no way
altered, modified, or re-enacted the statute protecting
the owner in his rights to property obtained by lar-

ceny, robbery or burglary, as that statute is found in
the session Laws of 1854, and the code of 1881, the
same now being § 2129, Rem. Code.   At the time of the
trade of the Maxwell car to appellant's vendors, § 2129
meant just what it did in 1854 when it was enacted.
In endeavoring to ascertain just what the legislature
of 1854 intended in enacting that statute, we must, as
far as possible, place ourselves in the light that legis-
lature enjoyed, and discover its purpose and intent
from the language used.   Or, as was tersely said in
*Bloomer v. Todd,* 3 Wash. Terr. 599, 19 Pac. 135:

"The ordinary use of words at the time when used.
and the meaning adopted at that time, is usually the
best guide for ascertaining legislative intent, as it is
always the intent of any written instrument or law at
the time it was made that is to govern in enforcing it."

And further, in the same case:

"When giving a construction to a statute, the thing
which we are to arrive at with as much certainty as
we are able is the thought which it was intended to ex-
press, and the intent of the power prescribing the rule;
and we are to enforce this intent as it existed at the
time it was made."

See, also, *United States v. Union Pac. R. Co.,* 91
U. S. 72; *Platt v. Union Pac. R. Co.,* 99 U. S. 48; *In re
Bergeron,* 220 Mass. 472, 107 N. E. 1007, Ann. Cas.
1917 A 549.

It may be observed here that, at common law, there
was a distinction between larceny and obtaining goods
by false pretenses.   They were separate and distinct
crimes.  *Smith v. People,* 53 N. Y. 111, 13 Am. Rep.
474; *Thorne v. Turck,* 94 N. Y. 90, 46 Am. Rep. 126;
*People v. Rae,* 66 Cal. 423, 6 Pac. 1, 56 Am. Rep. 102;
17 R. C. L., § 6, p. 8; 2 Chitty's Blackstone (4), pp. 229
*et seq.,* and 158 and note.  They were treated as dis-
tinct crimes by the legislature of 1854, as already

seen. They were so considered in the same chapter of the same act. It follows, therefore, from the settled rule of statutory construction adverted to, that when, in that same chapter and act, the legislature of 1854 provided that no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his rights to property obtained from him by larceny, robbery or burglary, it was the equivalent of declaring that no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his rights to property obtained from him by the feloniously stealing, taking and carrying, leading or driving it away, or by embezzlement, or by the false personation of another, or by robbery or burglary. If that statute were in such substituted words now (as in legal effect it is) there could not be any controversy in this case. Those were the only ways in which larceny could be committed. That was all the word larceny meant. It was in that sense it was employed and understood by the legislature. In addition to the word "larceny", it did not say "as herein defined or as it may be hereafter defined by the legislature", nor did it use any other words of similar import. Had the legislature at that time gone further and said that the protection afforded the owner as against the rights of a *bona fide* purchaser from a wrongdoer shall not apply in the case of a *bona fide* purchaser from one who obtains goods by false pretenses, the situation would then have been just as it was actually provided, since it is seen that the crime of obtaining money or other property by false pretenses was defined to be a separate crime, and not included in the definition of larceny, robbery or burglary.

It is true that, by the criminal code of 1909, the distinction between larceny and obtaining goods by false pretenses was broken down, yet there has been no re-

adjustment by the legislature of the statute protecting the property rights of the owner as against those of a *bona fide* purchaser from a wrongdoer by any re-enactment of that statute so as to cover additional kinds of transactions since defined to be larceny. The virtue of the statute is not to be found in the word "larceny", as used in any sense other than to identify that class of acts or transactions which the legislature then had in mind, against which the owner of property would be protected; and its scope cannot be extended by later legislative enlargement of the kind of transactions called by that name. To extend the intention of the legislature of 1854, as expressed in its statute, § 51, p. 84 (now Rem. Code, § 2129), to and ingraft it into this new kind of larceny, which that legislature negatively refused to do, would be an unwarranted extension of the manifest intention of the legislature, under the guise of judicial interpretation.

Counsel for respondent contends the case of *State v. Skilbrick*, 25 Wash. 555, 66 Pac. 53, 37 Am. St. 784, holds contrary to the view we herein express. We think counsel is in error. That was a criminal case in which the defendant was convicted of larceny. The opinion finds that he and his confederates obtained the money of the prosecuting witness in a manner that was without the owner's consent. The opinion quotes from Rapalje on Larceny and Kindred Offenses (§ 14), as follows:

"If by trick or artifice the owner of property is induced to part with the custody or naked possession of it to one who receives the property *animo furandi,* the owner still meaning to retain the right of property, the taking will be larceny."

That is, it was a case of obtaining the possession of property without the consent of the owner that the title should pass, while in the case at bar the appellant

purchased the car from persons to whom the respondent had voluntarily delivered it intending at the time to transfer not only the custody or bare possession of it but the right and title of property in it as well.

Reversed, with directions to enter judgment in favor of the appellant.

PARKER, C. J., FULLERTON, MAIN, TOLMAN, MACKINTOSH, and BRIDGES, JJ., concur.

HOLCOMB, J. (dissenting)—The statute protecting title to personal property, while passed long before the present statute defining larceny, is as much a continuing positive law as if they had been passed in the same act. Had the statute protecting the title to personal property been enacted at the same time, or after, the statute defining larceny, there would be no question but that they would be construed together, and that the statute protecting title to personal property would apply in this case.

I therefore dissent.