[No. 16381.  Department One.  July 28, 1921.]

## C. C. HARRIS, *Respondent*, v. NORTHWEST MOTOR COMPANY, *Appellant*.[1]

ELECTION OF REMEDIES (3)—ACTS CONSTITUTING ELECTION—MISTAKE IN REMEDY.  There was no election of remedies by a purchaser's action to recover from the seller the price of a car, wrongfully sold by the seller's agent, who was clothed with apparent authority to sell, which would bar plaintiff's subsequent action of replevin against defendant, who had seized the car as his own; since the doctrine of election of remedies applies only in case of the pursuit of inconsistent remedies against the same party and not in case of a mistake in originally bringing action against the wrong party.

EVIDENCE (104)—HEARSAY—STATEMENTS BY OTHER THAN PARTIES OR WITNESSES—OWNERSHIP OF PROPERTY—COMPETENCY.  In an action of replevin for an automobile, the declaration of the seller of the car, a former owner, that he was not the owner at the time he made the sale to plaintiff, but would repurchase it and turn it over to him, was inadmissible in evidence against plaintiff, though made in his presence, where there was no showing that plaintiff acquiesced in the statement and intended to be bound thereby.

PRINCIPAL AND AGENT (34-42)—AUTHORITY OF AGENT—EVIDENCE—SUFFICIENCY.  An automobile sales agent's real or apparent authority to sell second-hand cars, which was denied by defendant, was properly a question for the jury, in an action of replevin, where the evidence showed defendant conducted two departments, one for the sale of new cars and the other for the sale of second-hand cars; that the agent had received a second-hand car as part payment on the sale of a new car and had placed the former in the proper department, from which he sold it without accounting to the defendant; that the agent advertised a second-hand car for sale from his residence, and an inquiry at such place resulted in an authorized representative of defendant calling at the prospective purchaser's place of business, and stating that the sales agent made a practice of advertising from his residence as a more likely means of making a sale of second-hand cars than if they had been advertised from a public garage or motor company.

SALES (96-99)—RIGHTS OF BUYER AS TO THIRD PERSONS—PROPERTY OBTAINED BY LARCENY—STATUTES.  Rem. Code, § 2129, providing that "all property obtained by larceny, robbery or burglary shall be re-

[1]Reported in 199 Pac. 992.

turned to the owner, and no sale, whether in good faith on the part of the purchaser or not shall divest the owner of his rights to such property," is inapplicable in case of the embezzlement of the proceeds of sale of an automobile by an agent clothed with apparent authority to make the sale, where the agent did not embezzle the car itself.

Appeal from a judgment of the superior court for King county, Jurey, J., entered August 23, 1920, upon the verdict of a jury rendered in favor of the plaintiff, in an action of replevin. Affirmed.

*Kerr, McCord & Ivey,* for appellant.
*Ned Roney,* for respondent.

BRIDGES, J.—Suit for possession of an Oakland automobile. The case was tried before a jury, which rendered its verdict in favor of the plaintiff, and defendant has appealed from the judgment entered thereon. The controlling facts are as follows: In September, 1919, Mrs. Grottle, of Seattle, was the owner of the Oakland car. During that period and before and after, one C. A. Doty was in the employ of the appellant as a sales agent of automobiles. As such agent, he sold to Mrs. Grottle a Hudson car and, on behalf of the appellant, received the Oakland car as part payment. After this transaction, Doty sold the used Oakland car to Compton & Martin, also of Seattle, who were dealers in second-hand cars. Within a few days thereafter, Compton & Martin sold the same car to the respondent. The appellant had knowledge of the sale of the Hudson car to Mrs. Grottle and the receipt of the Oakland car in part payment, but it did not know that its agent Doty had sold the Oakland car, because Doty did not account to it for the sales price. Learning that it did not have the car in its used car department, the appellant commenced a search for it and ultimately found it on the streets of

Seattle, where the respondent had left it. Appellant at once took the car into possession and refused to surrender it to the respondent, claiming that it was the owner of the car and that respondent did not have any title to it.

We will first dispose of certain preliminary questions: It appears that, as soon as the respondent learned that the appellant had possession of the Oakland car, he was by the latter put in touch with one of its attorneys, who was also its secretary. As a result of respondent's conference with the attorney, suit was started by him against Compton & Martin, as vendors, for the purchase price, alleging that they did not have title to the car when they sold it to him. Shortly thereafter the respondent, having obtained additional information, changed attorneys, dismissed the suit against Compton & Martin, and instituted this action. The appellant now claims that, by the bringing of the first suit, respondent had elected between remedies, and therefore cannot maintain this action. We cannot agree with this contention. Election of remedies cannot arise under these circumstances because there could not be two or more inconsistent remedies. If Compton & Martin were liable to respondent for the purchase price, the appellant would not be liable to him for the return of the car; and if the appellant were liable for the return of the car, Compton & Martin could not be liable for its purchase price. Here there was nothing more than respondent bringing his action against Compton & Martin for the purchase price, and being later convinced that he had sued the wrong parties, dismissed it and brought this action. There cannot be an election of remedies under such circumstances. 9 R. C. L. 962 lays down the principle as follows:

"The principles governing election of remedies are necessarily based upon the supposition that two or

more remedies exist. If in fact or in law only one remedy exists, there can be no election by the pursuit of another and mistaken remedy. It is a well-established rule that the choice of a fancied remedy that never existed and the futile pursuit of it, either because the facts turn out to be different from what the plaintiff supposed them to be, or the law applicable to the facts is found to be other than supposed, though the first action proceeds to judgment, does not preclude the plaintiff from thereafter invoking the proper remedy. And likewise a mere mistake in selecting a wrong party does not preclude a party from asserting liability against the person liable when he is discovered. . . ."

The same rule has been laid down by this court in the case of *Roy v. Vaughan*, 100 Wash. 345, 170 Pac. 1019, where the late Justice Morris, in discussing the question of election of remedies, said:

"Before there can be an election of remedies, there must be two or more inconsistent remedies available to a party, any one of which he is at liberty to pursue. That respondents erroneously believed themselves entitled to the first remedy sought does not prevent them, upon learning that their provable facts were insufficient to maintain that remedy, from seeking another remedy their facts would sustain. A mistake in remedy can never be considered as an election of remedies."

See, also, extensive note to the case of *Clark v. Heath*, 101 Me. 530, 64 Atl. 913, 8 L. R. A. (N. S.) 144.

Appellant strongly relies upon the case of *Pickle v. Anderson*, 62 Wash. 552, 114 Pac. 177, and asserts that the doctrine of that case is contradictory to the doctrine in the case of *Roy v. Vaughan, supra*. We think there is a clear distinction between the two cases, and that the *Pickle* case is not at all controlling of the facts here.

During the progress of the trial the appellant sought to show that at one time Compton & Martin, in the

presence of the respondent, and during the period of
the suit against them, conceded that they were not
the owners of the car, and that appellant was such
owner, and offered to buy it from appellant and turn
it over to respondent in order to make good their ob-
ligation to him. The court announced that he would
refuse to receive such testimony unless appellant
would also show that Compton & Martin had made such
statements with the consent of the respondent, and that
the latter concurred therein and agreed to be bound
thereby. The appellant did not offer any such testi-
mony, but limited its offer to the fact that Compton
& Martin had made the representations in the presence
of the respondent. We think the ruling of the court
was eminently correct. The respondent had bought
and paid for the car and the only thing he was in-
terested in was to get possession and good title. It
was, of course, immaterial to him whether Compton
& Martin repurchased the car from the appellant, and
his mere failure to object to such a proposition would
not be sufficient to show that he had concurred in the
representations and intended to be bound by them.
Appellant fails to bring itself within the rule contend-
ed for by it, as contained in 22 C. J. 360, § 421, as
follows:

"Statements of a former owner of personal prop-
erty, made after he has parted with his title, are not
admissible in evidence either against the immediate
transferee of the declarant or against a subsequent
owner, unless the person against whom the statement
is sought to be used has acquiesced therein."

The appellant did not offer any testimony even tend-
ing to show that the respondent acquiesced in the repre-
sentations or statements made by Compton & Martin.
While the offered testimony might have been compe-

tent in an action between appellant and Compton & Martin, it was not competent in this action.

The appellant further contends that the testimony was wholly insufficient to carry the case to the jury on the main question whether Doty had either the real or apparent authority to sell the used Oakland car to Compton & Martin. Appellant's testimony in this regard was that it had two distinct departments in its business; one being the sale of new automobiles, and the other the sale of second-hand cars obtained by it in the same manner the car in question was obtained, and that the only authority which Doty had was to sell new cars. It is admitted, however, that he had the right to take in second-hand cars in part payment of new cars sold by him. On the other hand, respondent's testimony tended to show that Doty had been employed by appellant for about two years, as its agent in selling cars, and that Compton & Martin knew him as such agent; that, when Doty undertook to sell to Compton & Martin the Oakland car, they supposed that in so doing he was acting as the agent of the appellant, and that nothing occurred at the time of the sale or prior thereto to indicate anything to the contrary. Not very long before the transaction involved here, Doty advertised in the daily papers a used car for sale; such advertisement coming from Doty's private residence. Compton & Martin, in answering this advertisement, telephoned to Doty's residence about the advertised car, and were informed by Mrs. Doty that, at that time, it was down town. Within the next day or two, one of the appellant's duly authorized representatives appeared at the place of business of Compton & Martin in response to their telephone inquiry at the Doty residence. At that time appellant's representative stated to Compton & Martin that Doty was a sales agent of

the appellant, and that he made it a practice to advertise cars from his residence because prospective purchasers would more likely purchase such a car than one advertised from a public garage or motor company. There was also other testimony tending to show that Doty had at least apparent authority to sell the car in question. The law on this question is tersely stated in 21 R. C. L. 856, as follows:

"Whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages, and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of his principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it."

A similar principle is laid down in 2 C. J. 570, as follows:

"While as between the principal and the agent the scope of the latter's authority is that authority which is actually conferred upon him by his principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third persons ignorant thereof; and as between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal holds the agent out as possessing or which he permits the agent to represent that he possesses, and which the principal is estopped to deny, and the principal will be bound by all acts of the agent performed in the usual and customary mode of doing the particular business, although he may have acted in violation of private instructions, unless there is something in the nature of the business or the circumstances of the case to indicate that the agent is acting under special instructions or limited powers."

Under these rules there cannot be any question but that there was ample testimony to carry the case to

the jury on the question of the authority or apparent authority of the agent Doty to dispose of the Oakland car.

The appellant further contends that our recent case of *Linn v. Reid,* 114 Wash. 609, 196 Pac. 13, is controlling of this case in its favor. The facts in the *Linn* case were that he was the owner of a Maxwell car, and while driving it on the public road met two strangers driving a Hudson car. After certain negotiations, Linn traded his car for that which the strangers were driving, and at once surrendered it to them and took possession of their car. These strangers had stolen the Hudson car. Very shortly its owner found it in the possession of Linn and demanded and obtained possession of it. Thereupon Linn, after a search, located his Maxwell car in Reid's possession. The latter refused to surrender it to him and he instituted suit for its recovery. In that case Linn took the position that if it be conceded that the general doctrine is that, in the case of the sale and delivery by the owner of personal property, although he may have been induced to make such sale and delivery by fraudulent acts and representations amounting to a felony by statute, the vendee may convey a good title to a *bona fide* purchaser, yet that general rule had been changed by virtue of § 2129, Rem. Code, which is as follows:

"All property obtained by larceny, robbery or burglary shall be returned to the owner; and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his rights to such property."

Linn contended that, inasmuch as the criminal statutes of the state provide that one obtaining property fraudulently and by misrepresentations was guilty of larceny, he was protected by § 2129. We held, however, that, when that section was enacted, the legisla-

ture had in mind the kind of larceny then defined by the statutes, and that the fact that later statutes had included other offenses under the head of larceny, would not authorize the court to enlarge the meaning of larceny as used in § 2129. But appellant here contends that Doty embezzled the Oakland car, and that, at the time of the passage of § 2129, embezzlement was a species of larceny, and consequently it is entitled to protection under that section. It is our view that neither the *Linn* case nor § 2129, Rem. Code, have any bearing on this case. If it had been conceded in this case, or the jury had found, that Doty had embezzled the Oakland car, then the *Linn* case might be applicable. But the main question submitted to the jury was whether Doty had actual or apparent authority, as appellant's agent, to sell the Oakland car. If he had, his sale was perfectly valid and there could not be any question of embezzlement by him of the car. What Doty embezzled was the money which he received from the sale of the car and not the car itself.

We do not find any error; the judgment is affirmed.

PARKER, C. J., MACKINTOSH, FULLERTON, and HOLCOMB, JJ., concur.