[No. 36893-5-II. Division Two. September 3, 2008.]

DIMENSION FUNDING, LLC, *Appellant*, v. D.K. ASSOCIATES, INC., ET AL., *Respondents*.

654

*Scott D. Crawford, Krista L. White,* and *Laurie K. Friedl* (of *Bishop, White & Marshall, PS*), for appellant.

*N. Joseph Lynch II* (of *Lynch Law Offices*) and *James B. Meade II* (of *Forsberg & Umlauf*), for respondents.

¶1 HUNT, J. — Dimension Funding LLC appeals the trial court's denial of its action for replevin, in which it sought repossession of a leased vehicle that its lessee sold to Edward Seabold, an innocent third party. Dimension Funding argues that the trial court erred by (1) finding RCW 10.79.050 inapplicable and (2) applying the comparative innocence doctrine. We affirm.

## FACTS

### I. BACKGROUND

¶2 In April 2006, Dimension Funding LLC entered into an equipment financing agreement with used car dealer DK Associates, Inc., dba Triad Marketing, Inc., for a 2004 Volkswagen Touareg. Dimension Funding remained the legal owner of the Touareg and held its title, filed with the Washington State Department of Licensing. The agreement

between Dimension Funding and DK Associates specified that DK Associates (1) could use the Volkswagen "solely for business and commercial purposes" and (2) could not sell it. Dimension Funding transferred possession of the Touareg to DK Associates.

¶3 In December 2006, the owner of DK Associates, Darrell Kempf, represented that the Touareg was part of DK Associates' used car inventory, and he sold it to Edward Seabold. CU Dealer Direct, LLC,[1] initially financed the transaction for Seabold but later transferred Seabold's loan to Twin Star Credit Union. Twin Star held the title to the Touareg while Seabold was making payments on his loan. Kempf embezzled the proceeds from the sale of the Touareg and disappeared.

¶4 When DK Associates defaulted on its payments for the Touareg, Dimension Funding attempted to repossess it in January 2007. Dimension Funding discovered that Kempf had executed a release of interest on the Touareg's title by forging the signature of Dimension Funding's managing member, Michael Wagner.

## II. MOTION FOR REPLEVIN

¶5 In July 2007, at Dimension Funding's request, the trial court ordered DK Associates, Twin Star, and Seabold to appear and to show cause why the court should not enter an order restoring Dimension Funding's possession of the Touareg. Twin Star and Seabold responded.[2] A pro tempore court commissioner denied Dimension Funding's motion for replevin, emphasizing (1) Seabold's status as an innocent buyer and (2) that Dimension Funding had "entrusted [the Touareg] to a car dealer."

---

[1] CU Dealer Direct is not a party to this appeal.

[2] Kempf's current whereabouts are unknown, but the parties believe he is in Bolivia. The Federal Bureau of Investigation is investigating Kempf for larceny, theft, fraud, and forgery of hundreds of vehicle title documents throughout Washington State.

¶6 Dimension Funding moved for revision of the commissioner's decision. Based on Seabold's status as an innocent buyer, the trial court denied the motion.

¶7 Dimension Funding appeals.

## ANALYSIS

¶8 Dimension Funding argues that the trial court erred by finding that RCW 10.79.050 did not apply because Kempf sold the Touareg to Seabold by larcenous means. Twin Star and Seabold contend that the trial court properly determined Seabold's status as an innocent buyer and, therefore, RCW 10.79.050 did not apply. We agree with Twin Star and Seabold.

### I. STANDARD OF REVIEW

¶9 We review de novo a trial court's interpretation of a statute. *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996). RCW 7.64.010 governs replevin actions. But the original owner may also retrieve property obtained by "larceny, robbery or burglary" under RCW 10.79.050. Because we must engage in statutory interpretation to determine whether RCW 10.79.050 applies, our review is de novo.

### II. APPLICABILITY OF RCW 10.79.050[3]

¶10 Even if a seller engaged in fraudulent acts and representations, common law generally held good the title of an innocent, bona fide purchaser of personal property. *Harris v. Nw. Motor Co.*, 116 Wash. 412, 419, 199 P. 992 (1921). A "bona fide purchaser" is a buyer who gives a vendor valuable consideration in exchange for property "without notice of another's claim of right to, or equity in, the

---

[3] Early cases refer to RCW 10.79.050 as Rem. Rev. Stat. § 2129. The text remains unchanged, though the legislature later recodified Rem. Rev. Stat. § 2129 as RCW 10.79.050. For consistency, we use the recodified designation, RCW 10.79.050.

property prior to his acquisition of title." *Glaser v. Holdorf*, 56 Wn.2d 204, 209, 352 P.2d 212 (1960) (citing *Biles-Coleman Lumber Co. v. Lesamiz*, 49 Wn.2d 436, 439, 302 P.2d 198 (1956)). Regardless of potential fraudulent acts and representations, generally, a " 'vendee may convey a good title to a *bona fide* purchaser.' " *Linn v. Reid*, 114 Wash. 609, 612, 196 P. 13 (1921) (quoting *Cochran v. Stewart*, 21 Minn. 435, 440, 1875 WL 3811, 1875 Minn. LEXIS 144).

¶11 In 1873, the state legislature passed Rem. Rev. Stat. § 2129, now RCW 10.79.050, expanding an exception to the general rule protecting an innocent buyer's title. *Richardson v. Seattle-First Nat'l Bank*, 38 Wn.2d 314, 316-17, 229 P.2d 341 (1951). RCW 10.79.050 provides, "All property obtained by larceny, robbery or burglary, shall be restored to the owner; and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his rights to such property."

¶12 Here, the parties do not dispute that Seabold was a bona fide purchaser of the Touareg. Instead, resolution of this case depends on whether the RCW 10.79.050 "larcenous acquisition" exception applies. We hold that it does not.

"Larceny" in RCW 10.79.050

 ¶13 In order to determine whether RCW 10.79.050 applies, we must first decide whether the circumstances here amounted to "larceny" within the meaning of the statute. Under RCW 10.79.050, the "legislature had in mind [a] kind of larceny then defined by the statutes"; hence it did not include "other offenses under the head of larceny," even though a later version of the statutes eventually enlarged the definition. *Harris*, 116 Wash. at 419-20.[4]

---

[4] Although Dimension Funding argues otherwise, "larceny" in the context of RCW 10.79.050 appears to be separate and distinct from "criminal larceny," as defined in RCW 9A.56.100 (equating larceny with theft).

¶14 In an early case interpreting "larceny" in RCW 10.79.050, the Washington Supreme Court examined the legislative history of RCW 10.79.050 in order to determine the intent of the statute. *Linn*, 114 Wash. at 613. The court concluded that the statute

> was the equivalent of declaring that no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his rights to property obtained from him by the feloniously stealing, taking and carrying, leading or driving it away, or by embezzlement, or by the false personation of another, or by robbery or burglary. . . . Those were the only ways in which larceny could be committed. That was all the word larceny meant.

*Id.* at 616. The court held that because common law distinguished between "larceny" and "obtaining goods by false pretenses," the legislature did not intend the word "larceny" to encompass situations where a purchaser obtains goods by false pretenses. *Id.* at 615-17.

### *Harris*

¶15 Dimension Funding argues that the trial court erred by applying *Harris*, 116 Wash. 412, because the facts in *Harris* are distinguishable.[5] Twin Star and Seabold coun-

---

[5] Instead, Dimension Funding maintains that *Richardson*, 38 Wn.2d 314, is more comparable to the facts here. In *Richardson*, the owner of a Chevrolet, Eva Richardson, sold her car to an imposter claiming to represent a car dealership. *Id.* at 314-15. The imposter paid for the Chevrolet with a check, which Richardson later discovered was forged. *Id.* at 315. In the meantime, the imposter sold the Chevrolet to another car dealership, forging Richardson's signature on the certificate of title. *Id.* The dealership later sold the car to a bona fide purchaser and conveyed the title with the forged signature to the purchaser. *Id.* Richardson brought an action for replevin for repossession of the Chevrolet, which the trial court granted. *Id.*

Our Supreme Court affirmed, holding that larceny, "as it was defined at the time of the enactment of [RCW 10.79.050]," included obtaining property by false impersonation. *Id.* at 317. Because false impersonation qualified as a form of larceny, "even when the vendee [was] an innocent party, if the goods were obtained from the true owner by false impersonation . . . , the statute [was] applicable and [had to] prevail." *Id.*

The facts here are distinguishable from those in *Richardson*. Even though the bona fide purchaser in *Richardson* was innocent, because the dealership had

tered that the trial court properly construed *Harris* and *Harris* controls here. Again, we agree with Twin Star and Seabold.

¶16 In *Harris*, a woman exchanged an Oakland vehicle for a Hudson vehicle at a dealership. *Id.* at 413. The sales agent at the dealership, Doty, sold the Oakland vehicle to another used car dealer, Compton & Martin, and embezzled the proceeds. *Id.* at 413-14. Compton & Martin then sold the Oakland vehicle to a bona fide purchaser. *Id.* at 413. Eventually, Doty's dealership realized that the Oakland vehicle was missing and found it on the streets of Seattle where the bona fide purchaser had left it. *Id.* Doty's dealership took possession of the vehicle and refused to surrender it to the bona fide purchaser, who then successfully sued for possession. *Id.* at 414.

¶17 The Washington Supreme Court agreed with the trial court, holding that RCW 10.79.050 did not apply and, thus, the general rule that a "vendee may convey good title to a *bona fide* purchaser" protected the innocent buyer. *Id.* at 419. Emphasizing that Doty had embezzled "the *money* which he received from the sale of the car and *not the car itself*," the court held that there was no larceny involved in the sale of the Oakland vehicle, rendering RCW 10.79.050 inapplicable. *Id.* at 420 (emphasis added).

¶18 Here, we hold that because RCW 10.79.050 applies to crimes of possession, the trial court properly applied *Harris*. As in *Harris*, DK Associates was in the business of selling used vehicles, and Kempf had both apparent and actual authority to sell a used car to Seabold on DK's behalf.[6] Kempf's subsequent conversion of the

bought the car from a false impersonator, RCW 10.79.050 applied and defeated the innocent buyer's title. In contrast, here, Seabold bought the car from Kempf, the owner and a valid agent of DK Associates. Kempf's actions did not trigger RCW 10.79.050 because Kempf did not embezzle the car itself; thus, there was no larceny involved in Seabold's purchase of the Volkswagen.

[6] The apparent or "ostensible authority of an agent can be inferred only from acts and conduct of the principal." *Lamb v. Gen. Assocs., Inc.*, 60 Wn.2d 623, 627, 374 P.2d 677 (1962) (citing *Nichols v. McDougal*, 175 Wash. 536, 27 P.2d 699 (1933)). "Facts and circumstances are sufficient to establish apparent authority

Touareg, forgery on the certificate of title, and embezzlement of the proceeds from the Touareg's sale did not trigger RCW 10.79.050 because Kempf did not come to possess the car by theft or other larcenous means. Instead, by leasing the vehicle to DK Associates, Dimension Funding transferred possession of the Touareg to DK Associates voluntarily.[7]

¶19 Because DK Associates possessed the Touareg legally, we conclude that Kempf's subsequent unlawful acts did not trigger RCW 10.79.050. Because RCW 10.79.050 does not apply here, the general rule—that a vendee may pass good title to a bona fide purchaser—protects Seabold's title.

### III. COMPARATIVE INNOCENCE DOCTRINE

¶20 Dimension Funding next argues that the trial court erred by applying the comparative innocence doctrine. Because we hold that (1) RCW 10.79.050 does not apply and (2) the bona fide purchaser rule protects Seabold's title, we need not consider this argument further.[8]

---

only when a person exercising ordinary prudence, acting in good faith and conversant with business practices and customs, would be misled." *Id.* (citing *Olsson v. Hansen*, 50 Wn.2d 199, 310 P.2d 251 (1957)).

Dimension Funding argues that DK Associates lacked actual authority to sell the Touareg on Dimension Funding's behalf. But because Dimension Funding voluntarily transferred possession of the Touareg with the knowledge that DK Associates sold used vehicles, DK Associates' actual authority to sell the Volkswagen is immaterial. Instead, we conclude that Seabold acted with ordinary prudence when he purchased the Volkswagen from DK Associates, reasonably relying on DK Associates' apparent authority to sell the Volkswagen.

[7] That DK's initial legal possession of the Touareg was not accompanied by actual authority to sell it does not defeat the innocent purchase analysis.

[8] The comparative innocence doctrine provides that "[w]here a loss which is occasioned by the wrongful act of a third party must fall upon one of two innocent persons, the one whose conduct made the loss possible must bear it." *Ross v. Johnson*, 171 Wash. 658, 667, 19 P.2d 101 (1933). Where the original vendor voluntarily relinquished title and possession of the property, the comparative innocence doctrine protects a bona fide purchaser. *Stohr v. Randle*, 81 Wn.2d 881, 883, 505 P.2d 1281 (1973) (quoting *Linn*, 114 Wash. at 611).

Here, the trial court properly applied the comparative innocence doctrine, based on Dimension Funding's affirmative, voluntary transfer of the Volkswagen into DK Associates' possession. Although Dimension Funding did not voluntarily cede

¶21 We affirm the trial court's denial of Dimension Funding's motion for replevin.

PENOYAR, A.C.J., and ARMSTRONG, J., concur.

the Volkswagen's title to DK Associates or to Seabold, Dimension Funding made Kempf's fraudulent acts possible by placing the Volkswagen in his possession, with the knowledge that he was in the business of selling used cars. At minimum, Dimension Funding maintained a superior position over Seabold to take action to prevent Kempf's fraudulent acts.