IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| MERIDIAN PLACE, LLC, a Washington limited liability company, | No.  47292-9-II |
| Respondent, | |
| v. | |
| JOHN and JANE DOE HAUGHNEY, | UNPUBLISHED OPINION |
| Appellant, | |
| HUMCOR, INC., a Washington corporation d/b/a Callaway Fitness; PAWNEE LEASING CORPORATION, a Colorado corporation; KEY EQUIPMENT FINANCE, INC., a Michigan corporation; CASCADE BANK, a Washington corporation; SMART LENDING, LLC; JAMES and KRISTI LOVEALL and MICHAEL PETROVIC, | |
| Defendants. | |

JOHANSON, P.J.  —  Damages were imposed against John Haughney under the Uniform

Fraudulent Transfer Act (UFTA), ch. 19.40 RCW, after his corporation, Humcor, Inc., fraudulently

sold a fitness center, Callaway I, to James Loveall.  Haughney appeals the superior court's damages

award to Humcor's creditor, Meridian Place, LLC (Meridian).  Haughney argues that the superior

court erred when, on remand from this court, it calculated Meridian's damages award without deducting Cascade Bank's priority secured lien against Callaway I and Callaway II from Callaway I's value. We hold that the trial court did not abuse its discretion. Accordingly, we affirm the trial court's award of damages.

## FACTS

### I. BACKGROUND FACTS

Haughney was a shareholder and the treasurer of Humcor, the corporate owner of Callaway Fitness. In June 2006, Humcor signed a lease with Meridian providing a location for its second fitness center, Callaway II. Although Callaway I was financially successful, Callaway II was not and Humcor fell behind on its lease payments to Meridian.

On or about January 25, 2008, Humcor borrowed $325,000 from Cascade Bank to refinance and pay its leases and other debt. Cascade Bank had a security interest in first position with respect to the assets of Callaway I and II.

As of March 31, the balance of Cascade Bank's loan to Humcor was $321,706.04. On April 1, Humcor sold all of the assets of Callaway I to Loveall for $750,000. The agreement stated that Humcor would convey Callaway I's assets to Loveall "free and clear of any and all liens." Clerk's Papers (CP) at 478. Loveall agreed to pay Humcor $114,263.54 in cash and to assume Humcor's debts.[1]

---

[1] The debt assumed by Loveall as stated in the purchase and sale agreement totaled $635,736.46. However, Loveall never made any payments to reduce the debt and the parties do not dispute that the transfer of this debt was illusory.

Lovell gave Humcor a check for $114,263.54 on April 1, but Humcor did not deposit Loveall's check until April 22. Also on April 22, Humcor paid Cascade Bank $117,500. On April 24, Cascade Bank confirmed that it considered the $117,500 payment in full to release its security interest in Callaway I's assets, stating that "[t]his letter is also intended to provide comfort to the purchasers of [Callaway I] in that they have acquired [Callaway I] free and clear of our perfected security interest." CP at 490. The sale of Callaway I rendered Humcor insolvent such that it could not pay Meridian for Callaway II's delinquent rent.

## II. PROCEDURAL HISTORY

In July 2010, Meridian filed suit against Humcor under the UFTA. The trial court ruled that the sale of Callaway I to Loveall was a fraudulent transfer under the UFTA and that Meridian was entitled to judgment against Humcor. Notwithstanding that both parties agreed to Callaway's $750,000 market value, the trial court ruled that Callaway I was worth $75,000 and limited Meridian's damage award to this amount. Haughney paid Meridian $75,000.

Meridian appealed the $75,000 judgment amount. On appeal, we held that the trial court abused its discretion when it limited Meridian's damages to $75,000 because the record showed that the parties agreed that the value of Callaway I was $750,000 and other evidence produced at trial supported that value. We discussed RCW 19.40.011(2)(i) and .081(c) that govern how the value of a fraudulently transferred, encumbered asset should be calculated for the purpose of awarding a creditor. Specifically regarding Cascade Bank's lien, we stated,

> *We recognize that the trial court had authority under RCW 19.40.011(2)(i) and 19.40.081(c) to adjust the damages award downward in light of Cascade Bank's lien on Callaway I*, which Cascade Bank released immediately *after* Humcor's sale of Callaway I to Loveall when Haughney paid off the underlying loan with the sale proceeds. Thus, the trial court properly considered Cascade Bank's lien in adjusting the damages award downward *because UFTA does not*

3

> *treat encumbered property as an "[a]sset" of the fraudulent transferor. . . . A statutorily authorized downward adjustment of Meridian's damages in the amount of Cascade Bank's lien*, roughly $325,000, would still have left Meridian with damages of roughly $450,000, $350,000 more than the $75,000 that the trial court awarded.

CP at 164 (footnote omitted) (emphasis added). We vacated the trial court's damages award to Meridian and remanded to recalculate the damages award based on "RCW 19.40.081 and the relevant evidence." CP at 166.

On remand, the superior court held that Callaway I was worth $750,000 minus $114,263.54, "representing payment of the Cascade Bank lien," minus $75,000 already paid to Meridian for a total of $560,000 in damages owed to Meridian. CP at 367. The court reasoned that "the more 'equitable approach', as allowed by RCW 19.40, et al, is not to elevate 'form over substance', and to look at the real numbers that were used in releasing the lien, not the amount that existed at the time just before the transfer [of Callaway I]." CP at 367.

The superior court found that the value of Callaway I was $750,000 "[b]ased on the uncontroverted testimony of the parties to the transfer in question and agreement by all parties in the case." CP at 397. The superior court also found that

> 2. [t]he lien of Cascade Bank that had attached to the equipment at the Callaway I location prior to the transfer of that equipment to James Loveall was released by Cascade Bank in consideration for the receipt of $117,500 from Humcor on April 22, 2008. Humcor used the $114,263.54 down payment it received from James Loveall on April 1, 2008 to pay Cascade Bank to release the lien on Callaway I equipment. Cascade Bank stated in writing that it released its lien on the Callaway I equipment so that James Loveall would receive the equipment free and clear of the Bank's lien *and in fact the equipment was transferred to James Loveall free and clear of Cascade Bank's lien. Accordingly, the Cascade Bank lien did not diminish the value of the asset transferred to Mr. Loveall.*

CP at 397 (emphasis added). The trial court also concluded that

1.  [j]udgment should be entered in favor of the plaintiff and against John Haughney and his marital community in the amount of $560,736.46 which is calculated by the value of the asset transferred at the time of transfer of $750,000 less $75,000 already paid by Mr. Haughney to the plaintiff and less $114,263.54 in cash paid by Loveall to Humcor as part of the purchase price.

2.  The Cascade Bank lien was released from Callaway I's assets when they were transferred to James Loveall, did not diminish the value of those assets to him and, therefore should not be deducted from the value of the assets transferred to him.

CP at 398. Haughney appeals.

## ANALYSIS

Haughney argues that the trial court erred when it failed to deduct the entire amount of Cascade Bank's lien when calculating Meridian's damages under the UFTA. We disagree.

### I. STANDARD OF REVIEW

We review the interpretation of a statute de novo. *Dimension Funding, LLC v. D.K. Assocs., Inc.*, 146 Wn. App. 653, 657, 191 P.3d 923 (2008). We assume the legislature meant exactly what the statute says—if the statute is unambiguous, meaning must be derived from the wording of the statute itself. *Berger v. Sonneland*, 144 Wn.2d 91, 105, 26 P.3d 257 (2001).

We review findings of fact to determine whether substantial evidence supports them and whether the findings support the conclusions of law. *Hegwine v. Longview Fibre Co.*, 132 Wn. App. 546, 555, 132 P.3d 789 (2006), *aff'd*, 162 Wn.2d 340, 172 P.3d 688 (2007). We review conclusions of law de novo and legal conclusions to be drawn from the facts resulting in a mixed question of law and fact are reviewed de novo. *Rasmussen v. Bendotti*, 107 Wn. App. 947, 954, 29 P.3d 56 (2001); *Clayton v. Wilson*, 168 Wn.2d 57, 62, 227 P.3d 278 (2010).

We review a trial court's award of damages for abuse of discretion. *Krivanek v. Fibreboard Corp.*, 72 Wn. App. 632, 636, 865 P.2d 527 (1993). We will find an abuse of discretion only on a clear showing that the court's exercise of discretion was manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *T.S. v. Boy Scouts of Am.*, 157 Wn.2d 416, 423, 138 P.3d 1053 (2006). A trial court's discretionary decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported in the record or was reached by applying the wrong legal standard. *T.S.*, 157 Wn.2d at 423-24.

II. The Trial Court Properly Exercised Its Discretion In Awarding Damages

Haughney assigns error to the trial court's finding and conclusion that Cascade Bank's lien was not in effect at the time of Callaway I's sale and that Cascade's lien should not be deducted from Meridian's damages. Haughney contends that the entire $325,000 lien against Callaway I and Callaway II must be excluded from the $750,000 value of Callaway I. Meridian argues that the trial court properly excluded Cascade's lien from Callaway I's value to calculate the damages award under RCW 19.40.081(c). We conclude that the trial court did not abuse its discretion by finding that the value of the lien against Callaway I was $117,500.00 because that was the amount paid to Cascade Bank to release the lien from Callaway I so that Loveall received Callaway I free and clear of encumbrances.

The UFTA provides relief to creditors whose collection of debt is frustrated by a fraudulent transfer of an asset by the debtor. *Thompson v. Hanson*, 168 Wn.2d 738, 746, 239 P.3d 537 (2009). Its provisions govern the remedies a creditor can seek in the event of a fraudulent transfer. Ch. 19.40 RCW. Creditors can recover judgments for the value of the fraudulently transferred asset,

6

but the creditor is entitled to judgment for only the value of that asset at the time of transfer. RCW 19.40.081(b), (c). Specifically,

> (b) [e]xcept as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under RCW 19.40.071(a)(1), *the creditor may recover judgment for the value of the asset transferred,* as adjusted under subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. . . .
> 
> . . . .
>
> (c) If the judgment under subsection (b) of this section is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the *time of the transfer, subject to adjustment as the equities may require.*

RCW 19.40.081 (emphasis added).

The definition of "asset" excludes "[p]roperty to the extent it is encumbered by a valid lien." RCW 19.40.11(2)(i). "Valid lien" is defined as "a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." RCW 19.40.11(13). "Lien" is defined as "a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement." RCW 19.40.011(8). RCW 19.40.081(c) states, "If the judgment under subsection (b) of this section is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset *at the time of transfer*, *subject to adjustment as the equities may require.*" (Emphasis added.)

Here, it is undisputed that the transfer of Callaway I to Loveall was fraudulent and that the market value of Callaway I's assets at transfer was $750,000. The parties agree that Cascade Bank had a valid, first priority lien of $325,000 secured by the assets of Callaway I and II in existence on April 1—the day the sale of Callaway I to Loveall closed. The trial court found that Cascade Bank released its lien on Callaway I on receipt of $117,500. Cascade Bank released its lien so that

7

Loveall received Callaway I free and clear of the Cascade lien. The trial court reasoned that Cascade Bank's lien did not diminish the value of the asset transferred to Loveall. The trial court concluded that "the more 'equitable approach', as allowed by RCW 19.40, et al, is not to elevate 'form over substance', and to look at the real numbers that were used in releasing the lien, not the amount that existed at the time just before the transfer [of Callaway I]." CP at 367.

We conclude that the trial court properly exercised its discretion to adjust the value of the asset fraudulently transferred as equity required under RCW 19.40.081(c). We hold that the trial court properly exercised its discretion in determining damages.

### III. ATTORNEY FEES

Meridian argues that it is entitled to attorney fees because Haughney's appeal is frivolous pursuant to RAP 18.9(a), *West v. Thurston County*, 169 Wn. App. 862, 868, 282 P.3d 1150 (2012), and *Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187 (1980). We disagree.

RAP 18.9(a) authorizes compensatory damages when a party files a frivolous appeal for the purpose of delay. An appeal is frivolous if it presents no debatable issues upon which reasonable minds might differ and is so devoid of merit that there is no reasonable possibility of success. *West*, 169 Wn. App. at 868. The issues presented here are debatable and reasonable minds might differ, therefore this appeal is not frivolous. Thus, we deny Meridian's request for attorney fees.

No. 47292-9-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, P.J.

We concur:

MELNICK, J.

SUTTON, J.